Submitted June 27, 2012, affirmed June 19, petition for review denied November 7, 2013 (354 Or 389)

CARL LEE DIXON,
*Petitioner,*

*v.*

BOARD OF PAROLE
AND POST-PRISON SUPERVISION,
*Respondent.*

Board of Parole and Post-Prison Supervision
A146338

306 P3d 716

Peter Gartlan, Chief Defender, David O. Ferry, Deputy Public Defender, Office of Public Defense Services, filed the brief for petitioner.

John R. Kroger, Attorney General, Anna M. Joyce, Solicitor General, and Jeff J. Payne, Assistant Attorney General, filed the brief for respondent.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

NAKAMOTO, J.

## NAKAMOTO, J.

Petitioner is serving a life sentence for one count of aggravated murder, ORS 163.105. The trial court imposed a 30-year minimum sentence without the possibility of parole or work release and a 20-year minimum period before petitioner could seek parole review. He now seeks review of a decision by the Board of Parole and Post-Prison Supervision (the board) denying his request to change the terms of his confinement to a 30-year term. The board concluded that petitioner failed to carry his burden of proving that he was likely to be rehabilitated within a reasonable period of time. Petitioner contends that he provided sufficient evidence that he was capable of rehabilitation in a short period of time and, therefore, the board's decision was not supported by substantial evidence. In addition, petitioner contends that the board failed to provide substantial reasoning for its conclusions. In our review under ORS 183.482(8)(c), we conclude that the board's final order is supported by substantial evidence and substantial reason. Accordingly, we affirm.

In 1987, petitioner was drinking at a tavern. Petitioner recounted that, after several patrons left the bar, he engaged in an argument with the victim, the bartender, about whether petitioner also had to leave. Petitioner then followed the victim behind the bar, the victim kicked petitioner in the leg, and, in response, petitioner stabbed the victim with a pair of scissors. After stabbing the victim, petitioner then took money from the register and left the tavern. The victim later died from a stab wound to the heart. According to petitioner, he turned himself in to the police but initially denied committing the murder, blaming the stabbing on an unnamed accomplice. Petitioner later entered a guilty plea and was convicted of one count of aggravated murder. At the time of the murder, petitioner was 33 years old and was on parole in California for robbery.

In 2009, the board held a murder review hearing as to petitioner's sentence. The sole issue at the hearing, pursuant to ORS 163.105(2), was whether petitioner was likely to be rehabilitated within a reasonable time.[1] The board considered

---

[1] Under ORS 163.105(2) (1987), *amended by* Or Laws 1989, ch 720, § 1,

"[a]t any time after 20 years from the date of imposition of a minimum period of confinement pursuant to subsection (1) of this section, the State

material related to his crimes, court documents, and records from the Oregon Department of Corrections. At the time of his conviction, petitioner had a juvenile and an adult criminal record in California over a period of 18 years for several theft, robbery, assault, and burglary offenses, some of which he had committed during periods of probation or parole. While incarcerated, petitioner received at least eight disciplinary reports for the following misconduct: "Assault IV," "Disobedience I," "Contraband III," "Assault III," "Disobedience II," "Disrespect I," and "Forgery."

According to petitioner, he received certificates in a number of treatment, educational, and vocational programs: Cognitive Self-Change I and II, Breaking Barriers, Journeyman Upholstery, Alcoholics Anonymous, Freedom Road, and Lifers Speaking Panel. Petitioner admitted to having a drug and alcohol problem in the past, but he no longer participated in Alcoholics Anonymous. Petitioner also has been employed in various positions throughout his 20 years of confinement, but he rarely made any deposits of his earnings in his inmate account.

At the hearing, Carol Dixon, petitioner's wife, testified as to her relationship with petitioner. She explained that she had met petitioner while he was incarcerated and married him in 2003. When asked about their relationship, she explained that they have a lot in common, including their faith in God. She requested that the board release petitioner on parole, partly, because she is physically disabled and, consequently, needs his assistance "to get around." When asked by the board whether petitioner has the ability to be rehabilitated, she explained that petitioner does have the ability to be rehabilitated because of the support he receives from his family and his faith. She stated that, if petitioner were released, she would financially support him and is able to do so because she currently works two jobs.

---

Board of Parole, upon the petition of a prisoner so confined, shall hold a hearing to determine if the prisoner is likely to be rehabilitated within a reasonable period of time. The sole issue shall be whether or not the prisoner is likely to be rehabilitated within a reasonable period of time."

Petitioner also testified at the hearing. The board asked petitioner to explain the sequence of events that led to his conviction. In response, petitioner explained that, on the night of the murder, he was drinking at a tavern when the bartender, the victim, told him to leave, which led to an argument between the two of them. Petitioner stated that as the victim walked away, in his "paranoid state," he followed the victim behind the bar and stabbed him with a pair of scissors. Despite a statement in the Parole Analyst Report (PAR) that the victim's ring was stolen, petitioner denied stealing the victim's ring before leaving the bar. He admitted that he had fabricated the allegation that an unnamed accomplice committed the murder, but he explained that his attorney advised him to do so. When asked by the board to explain why petitioner followed the victim instead of leaving the bar, he responded by stating, "Because I didn't like myself." And when asked why petitioner could not have used some lesser degree of force to defend himself, he responded that he was a different person back then and that he could not explain what he felt at the time because he was under the influence of alcohol and rage and was not thinking.

Petitioner then described to the board his plan upon release. Petitioner stated that he intends to reside with his wife at her home in Idaho and would like to counsel or mentor at-risk youth. He also explained that he has secured employment at a barbershop owned by Niehoff, his wife's good friend. The board asked several questions related to the financial dynamic between petitioner and his wife, namely, why his wife had deposited approximately $1,700 in his inmate account in 2007. In response, petitioner explained that he had not asked for the money from his wife, and she had gifted the money to him. And, in response to the board's concern that his wife worked two jobs even though she had some physical disability, petitioner stated that "she work[s] two jobs because she want[s] to. Now, if she don't want to she don't have to."

The board also heard testimony in support of petitioner's release from petitioner's sisters; Hughes, Carol Dixon's daughter from another marriage; Niehoff; and Pastor Ross, Carol Dixon's pastor. In addition, the board received written statements of support for petitioner from individuals, some

of whom also testified at the hearing, including one from a member of the Ohio Justice Commission and one from a friend of petitioner. In general, those individuals described petitioner as a changed person due to his committed Christian faith and his wife's support.

In its final order, the board concluded that petitioner failed to meet his burden of proving, by a preponderance of the evidence, that he is likely to be rehabilitated within a reasonable time. Relying on OAR 255-032-0020, which outlines criteria for the board to use in determining whether petitioner is likely to be rehabilitated, the board's ultimate conclusion was based on findings related to his employment history; his maturity, stability, and demonstrated responsibility; his prior criminal history; his conduct during periods of probation or parole; his mental or emotional disturbance, deficiency, condition, or disorder; his parole plan; and the likelihood that he would conform to the conditions of parole.

The board found that petitioner lacked maturity, stability, and demonstrated responsibility that would promote his conformity to a law-abiding life based on four facts. First, the board found that petitioner's testimony was inconsistent with statements in the PAR. Despite a statement in the PAR to the contrary, petitioner denied stealing the victim's ring and claimed that he only stole money from the cash register.[2] Second, the board found that petitioner's testimony at the hearing demonstrated "minimal ability or willingness to reflect on his crime" and minimization of his crime. Third, the board was troubled by petitioner's 18-year history of robberies, armed robberies, assault with a deadly weapon, and other crimes, some of which occurred during periods of parole and probation. For the board, that history demonstrated "extremely poor performance while on probation and parole" and indicated that, even at the age of 33 when he murdered the victim, and despite numerous incarcerations, petitioner was incapable of foreseeing the serious consequences of his conduct. Lastly, the board found

---

[2] The board also noted that petitioner admitted to the board at the hearing that he had lied to investigators that an unnamed accomplice committed the murder, but that admission was consistent with information in the PAR, which noted that he had at first blamed the murder on an unidentified accomplice.

that the financial dynamic between petitioner and his wife showed that he lacked "motivation, maturity, or a sense of responsibility," which would be needed for him to succeed during supervision. The board also viewed his responses to the board's questions regarding his wife's employment and financial support as demonstrating "a strong sense of selfishness and self-centeredness" and that he lacked "empathy for his wife's efforts."

The board also found that the testimony of Pastor Ross, Hughes, and Neihoff regarding whether petitioner would likely be rehabilitated was not persuasive. The board accorded little weight to those witnesses' testimony because they "had little direct contact with [petitioner] and appear to base their beliefs regarding [his] rehabilitative capacity on their affection for [Carol] Dixon."

Petitioner timely sought administrative review by the board. In his review request, petitioner alleged that the board's "findings and conclusions are not based upon consideration of the whole record and as supported by[,] and in accordance with, reliable, probative and substantial evidence." The board granted petitioner's request for administrative review but denied petitioner's request for relief. In its order, the board explained that, having considered all the evidence in the record, it adhered to the findings and conclusions in its final order.

On judicial review, petitioner renews his arguments that the board's findings of fact lacked substantial evidence. In addition, petitioner argues that the board's conclusions are not supported by substantial reason. For the following reasons, we conclude that the board's order is supported by both substantial evidence and substantial reason.

On substantial evidence review, we must determine whether a reasonable person could make the findings that the board made, ORS 183.482(8)(c), and we do not substitute our own view of the evidence for the board's view of the evidence. *See* ORS 183.482(8)(c) ("Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding.");

*Murphy v. Board of Parole*, 241 Or App 177, 183, 250 P3d 13, *rev den*, 350 Or 571 (2011). Under ORS 163.105(2)(a), petitioner has the burden to prove that he was capable of rehabilitation. Thus, we examine the record to determine if there was substantial evidence for a reasonable person to conclude that petitioner did not meet his burden.

Petitioner argues that he provided more than enough evidence to prove that he is likely to be rehabilitated as required by ORS 163.105(2)(a). For purposes of parole, the board determines whether an inmate is likely to be rehabilitated within a reasonable time by considering the criteria set out in OAR 255-032-0020:

"(1)   The inmate's involvement in correctional treatment, medical care, educational, vocational or other training in the institution which will substantially enhance his/her capacity to lead a law-abiding life when released;

"(2)   The inmate's institutional employment history;

"(3)   The inmate's institutional disciplinary conduct;

"(4)   The inmate's maturity, stability, demonstrated responsibility, and any apparent development in the inmate personality which may promote or hinder conformity to law;

"(5)   The inmate's past use of narcotics or other dangerous drugs, or past habitual and excessive use of alcoholic liquor;

"(6)   The inmate's prior criminal history, including the nature and circumstances of previous offenses;

"(7)   The inmate's conduct during any previous period of probation or parole;

"(8)   The inmate does/does not have a mental or emotional disturbance, deficiency, condition or disorder predisposing them [*sic*] to the commission of a crime to a degree rendering them [*sic*] a danger to the health and safety of the community;

"(9)   The adequacy of the inmate's parole plan including community support from family, friends, treatment providers, and others in the community; type of residence, neighborhood or community in which the inmate plans to live;

"(10)   There is a reasonable probability that the inmate will remain in the community without violating the law, and there is substantial likelihood that the inmate will conform to the conditions of parole."

Petitioner's challenge addresses each criterion set out in OAR 255-032-0020. In contending that he has met his burden to prove, by a preponderance of the evidence, that he is likely to be rehabilitated, he asserts that his testimony and testimony of other witnesses in support of his release deserved more weight than was given by the board.

The board, however, contends that petitioner's argument does not provide a basis to reverse its final order. According to the board, petitioner has failed to argue that a "reasonable person" could not make the same finding as the board made, but rather incorrectly focuses his argument on whether there was ample "unrebuttable" evidence to justify ruling in his favor as to each criterion in OAR 255-032-0020.[3] *See Weems/ Roberts v. Board of Parole*, 347 Or 586, 602-03, 227 P3d 671 (2010) ("The fact that a reasonable person could also draw a contrary inference, or that reasonable persons might differ in their assessment of the strength of the inference * * * does not mean that the board's implicit finding in that regard is not supported by substantial evidence."). The board argues that petitioner is, essentially, requesting that this court reweigh the evidence, which is impermissible given our standard of review. *See Murphy*, 241 Or App at 184 ("'[S]ubstantial evidence review does not entail or permit the reviewing tribunal to reweigh or to assess the credibility of the evidence that was presented to the factfinding body.'" (Internal quotation marks and citation omitted; brackets in original.)).

We agree with the board that the issue is not, as petitioner frames it, whether petitioner provided more than enough evidence to support a conclusion that he had proved that he was likely to be rehabilitated. Rather, the appropriate

---

[3] The board argues that it is not under any obligation to rebut petitioner's evidence because he has the burden to prove he is capable of rehabilitation. We agree with the board that it has the authority to deny petitioner's requested relief if he fails to meet his burden of proof, regardless of whether some of his evidence is unrebuttable. *See* ORS 163.105(2)(a) (providing that the petitioner has "[t]he burden of proving by a preponderance of the evidence the likelihood of rehabilitation within a reasonable period of time").

inquiry is whether there is substantial evidence in the record to support the board's contrary conclusion that petitioner did not carry his burden to prove that he was likely to be rehabilitated. The board's ultimate conclusion was primarily based on its findings related to petitioner's criminal and parole history and his maturity, stability, and responsibility.[4] We address the evidence as to each of those findings in turn.

Regarding petitioner's criminal history and conduct on parole, criteria in OAR 255-032-0020(6) and (7), the board had evidence that, over a period of 18 years before he murdered the victim and robbed the victim and the bar, petitioner had engaged in a pattern of committing theft, robbery, armed robbery, assault with a deadly weapon, and burglary offenses, some of which he had committed during periods of probation or parole. The board found that, at the time of the murder, petitioner was unable to foresee the consequences of his criminal conduct, despite his multiple incarcerations, and his criminal record was "persuasive evidence" that he was not capable of rehabilitation.

Petitioner acknowledges that he has a significant criminal history. He argues, however, that his criminal history should not weigh heavily against a finding that he is capable of rehabilitation because those convictions occurred more than 20 years ago and preceded the positive changes he has made since his confinement: his vocational training, his involvement with the church, and his lack of recent disciplinary reports.[5]

---

[4] We note that, in determining whether petitioner is capable of rehabilitation within a reasonable time, the board is not required to rely on all of the criteria set out in OAR 255-032-0020 to support its ultimate conclusion, so long as that conclusion is supported by substantial evidence.

[5] Petitioner also contends that the board impermissibly relied on his criminal history in determining that he lacked maturity, stability, and demonstrated responsibility. According to petitioner, his criminal history is a separate criterion and cannot also support a finding that he lacked maturity, stability, and responsibility. In addition, he asserts that, because OAR 255-032-0020(4) is written in the present tense, the board cannot rely on conduct that occurred over 20 years ago to support a finding that, at the time of the hearing, he lacked maturity or responsibility. We conclude that the text of OAR 255-032-0020(4) does not preclude the board from considering petitioner's past conduct, including his criminal history, along with other evidence, to infer that he is presently immature or irresponsible.

We reject petitioner's argument that evidence of his criminal history cannot be "persuasive" because his unlawful conduct occurred 20 years ago. In 1985, the board promulgated OAR 255-032-0020, which included both a petitioner's criminal history and conduct during periods of parole or probation as factors in determining whether the petitioner is likely to be rehabilitated, even though the petitioner's criminal conduct would have occurred at least 20 years before the parole review hearing. *See* ORS 163.105(2) (1985), *amended by* Or Laws 1987, ch 158, § 23 (providing that a defendant convicted of aggravated murder is not eligible for a parole review hearing until the petitioner completes a 20-year minimum period of confinement). Because the review of a petitioner's criminal history and conduct during periods of parole will always involve conduct at least 20 years old in light of the 20-year minimum-term requirement before a review, we conclude that the board was permitted to assess the import of petitioner's history of criminal conduct.

We also disagree with petitioner's contention that, because, in his view, he had made some positive personality changes during his confinement, the board's findings regarding the import of his criminal history are not supported by substantial evidence. Again, according to our standard of review, we must determine whether a reasonable person *could* make the same finding that the board made. In its order, the board expressly found that petitioner lacked "maturity, stability, demonstrated responsibility, and character development that would promote his conformity to a law-abiding life," factors in OAR 255-032-0020(4). Because those findings are supported by substantial evidence, as we next discuss, we reject petitioner's argument. As a result, we conclude that substantial evidence supports the board findings related to OAR 255-032-0020(6) and (7).

As noted, the board explained that its findings regarding OAR 255-032-0020(4) were based on evidence of (1) inconsistencies between petitioner's testimony and the information contained in the PAR; (2) petitioner's inability or unwillingness to reflect on his crime and his minimization of his crime during his testimony; (3) petitioner's criminal history; and (4) petitioner's lack of financial responsibility. Petitioner challenges all four bases in support of the

board's finding that he lacked maturity, stability, or demonstrated responsibility that would promote his conformity to a law-abiding life.

Petitioner first challenges the board's finding that he lacked maturity or responsibility based on its determination that he had only minimal ability or willingness to reflect on his crime and was minimizing his crime. According to petitioner, he adequately recounted the events that led to the murder and took full responsibility for his conduct. When asked to explain why he stabbed the victim, petitioner explained that he had stabbed the victim because he "wasn't thinking" and instead acted under the influence of alcohol and rage. He contends that his inability to "justify" the crime was therefore reasonable.

After a review of the record, we conclude that substantial evidence supports the board's finding that petitioner minimized his crime. A reasonable factfinder could conclude on this record that what prompted petitioner to engage the victim, a stranger to petitioner, was petitioner's intent to rob the bar, and when the victim resisted, he murdered the victim. The board repeatedly asked petitioner to explain why his argument with the victim escalated to his use of deadly force, instead of his use of some lesser degree of force, and, in response, petitioner stated that he could not describe what he felt at the time. Although petitioner was apologetic and took full responsibility for his conduct, and repeatedly stated that he was now a changed man, a reasonable person could find—based on his pattern of robbery, his actual robbery of the bar and, it appears, the victim as well, and his inability or unwillingness to explain the reasons why he murdered the victim, other than alcohol and anger—that petitioner was unwilling or unable to reflect on his crime and to acknowledge its genesis.

Petitioner next challenges the board's finding that he lacked maturity or responsibility based on his financial dynamic with his wife. Petitioner argues that the board unreasonably found that he lacked maturity or financial responsibility based on evidence that his wife deposited $1,700 into his inmate account in 2007. According to petitioner,

he explained to the board that he did not need the $1,700 and that his wife merely gave the money to him. And because the board did not expressly ask him whether he was grateful for her gifts, petitioner argues that the record does not support the board's other finding that he lacked "empathy for his wife's efforts."

Petitioner does not dispute that he made few deposits of his own earnings into his inmate account. Although petitioner testified that he did not request that his wife give him money, petitioner relied on contributions from his wife, who worked two jobs even though she has health problems. And when the board asked petitioner whether it was fair for his wife to work two jobs, considering her health issues, he stated that she works two jobs "because she want[s] to." Regardless of whether petitioner asked his wife for the money, we conclude that it was reasonable for the board to infer that petitioner lacked financial responsibility because he depended on his wife's contributions rather than saving his own earnings and that petitioner lacked maturity in light of his answers. As a result, the board's finding that petitioner lacked maturity, stability, and financial responsibility is supported by substantial evidence. Accordingly, we conclude that the board did not err in determining that petitioner failed to carry his burden that he was likely to be rehabilitated in a reasonable time.

We now turn to whether the board's ultimate conclusion is supported by substantial reason. We first address whether the board is required to provide an explanation of its reasoning in its order. According to petitioner, the great weight of the evidence in the record conflicts with the board's ultimate conclusion, which, in his view, is not sufficiently explained. Petitioner relies, *inter alia*, on *Castro v. Board of Parole*, 232 Or App 75, 220 P3d 772 (2009), for the proposition that the board's orders must be supported by substantial reason. In response, the board contends that the "substantial reason" requirement in *Castro* does not apply to this case. The board distinguishes *Castro* by noting that the board's order in that case was governed by ORS 144.335(3).

In *Castro*, the court concluded that ORS 144.335(3) and, in turn, ORS 183.482(8)(c) require that the board include in its orders an explanation of its reasoning sufficient to allow appellate review. 232 Or App at 82-85. The board points out that its order was made pursuant to ORS 163.105, not ORS 144.335(3), and, therefore, that *Castro* is inapplicable. Although we agree with the board that ORS 144.335(3) is not at issue, the board overlooks that ORS 163.105, the governing statute, requires that the board's orders be supported by substantial reason.[6]

In relevant part, ORS 163.105 provides:

"Notwithstanding the provisions of ORS chapter 144 and ORS 421.450 to 421.490:

"* * * * *

"(5)  The board's final order shall be accompanied by findings of fact and conclusions of law. The findings of fact shall consist of a concise statement of the underlying facts supporting the findings as to each contested issue of fact and as to each ultimate fact required to support the board's order."

Thus, the requirements of ORS 163.105(5) apply to the board's order, "[n]otwithstanding the provisions of ORS chapter 144." *See State v. Milburn*, 205 Or App 205, 214, 134 P3d 969 (2006) (noting that the function of a "notwithstanding clause" is to indicate an exemption from the enumerated provisions to which the clause refers). Stated differently, for parole consideration in aggravated murder cases, the requirements of ORS 163.105(5) control instead of those in ORS 144.335(3).

The statutory language in ORS 163.105(5) is nearly identical to the language found in ORS 183.470(2), a provision of the Oregon Administrative Procedures Act that generally requires final agency orders to include findings of fact and conclusions of law and to articulate a rational connection

_____

[6] In its brief, the board incorrectly asserts that its order was governed by ORS 163.115(f), which provides the requirements for murder review hearings. However, in its order, the board stated that the review hearing was conducted pursuant to ORS 163.105. We agree with the board's order that ORS 163.105 governed petitioner's review hearing because he was convicted of aggravated murder, not murder.

between the two.[7] *See, e.g., Drew v. PSRB*, 322 Or 491, 500, 909 P2d 1211 (1996) ("[A]gencies also are required to demonstrate in their opinions the *reasoning* that leads the agency from the *facts* that it has found to the *conclusions* that it draws from those facts." (Emphasis in original.)). We conclude that ORS 163.105(5) similarly requires that the board's orders be supported by substantial reason.

Before we review whether the order in this case comported with the requirements of ORS 163.105(5), we pause to address the board's contention that we should not review petitioner's argument that the order lacks substantial reason, because he did not assert it below. *See Ayres v. Board of Parole*, 194 Or App 429, 435-36, 97 P3d 1 (2004) (noting that a "party must present the particular challenges it intends to raise on judicial review first to the administrative body whose review must be exhausted"). According to the board, petitioner's administrative review request stated only that he had exceeded the burden of proving by a preponderance of the evidence that he was likely to be rehabilitated within a reasonable time, not that the board's order lacked substantial reason.

We conclude that petitioner properly raised his substantial reason argument. In his administrative review request, petitioner contended that the board's *findings* and *conclusions* were not based upon consideration of the whole record. That challenge implicitly includes a substantial reason argument. "Where a petitioner argues that an order is not supported by substantial evidence, a court will also review the order for substantial reason to ensure that the order articulates the reasoning that leads from the facts found to the conclusions drawn." *Salosha, Inc. v. Lane County*, 201 Or App 138, 143, 117 P3d 1047 (2005); *see Simpson v. Board of Parole*, 237 Or App 661, 663, 241 P3d 347 (2010) (holding that the standard of review in ORS 183.482(8)(c) for substantial evidence in the record also requires that the

---

[7] Under ORS 183.470(2),

"A final order shall be accompanied by findings of fact and conclusions of law. The findings of fact shall consist of a concise statement of the underlying facts supporting the findings as to each contested issue of fact and as to each ultimate fact required to support the agency's order."

The board is exempt from the provisions of ORS 183.470. ORS 183.315(1).

board's conclusions "be supported by substantial reason, *i.e.*, its conclusions must reasonably follow from the facts found"); *accord Drew*, 322 Or at 499-500 (following "a long and consistent line of decisions from the Court of Appeals" and holding that, "in addition to the statutory requirement that findings be supported by substantial evidence, agencies also are required to demonstrate in their opinions the reasoning that leads the agency from the facts that it has found to the conclusions that it draws from those facts" (emphasis omitted)). Because petitioner in his administrative review request contended that the board's conclusions were not supported by the record, he adequately asserted his substantial reason argument.

We now address whether the board's ultimate conclusion is supported by substantial reason. Petitioner contends that two of the board's conclusions lack substantial reason: (1) that petitioner lacked maturity, stability, and responsibility; and (2) that petitioner's employment record was "undermine[d]" by his wife's financial contributions to his inmate account.[8] In response, the board argues that its order "connected the dots between petitioner's evidence and the criteria" set out in OAR 255-032-0020 to determine whether petitioner was likely to be rehabilitated. We agree with the board.

The board's ultimate conclusion is supported by substantial reason. This is not a case where the board failed to provide sufficient detail or explanation in support of its conclusions sufficient for appellate review. *Cf. Castro*, 232 Or App at 85-86 (holding that the board stated a mere conclusion—"'[b]ased on the doctor's report and diagnosis, coupled with all the information that the board is considering,' it is reasonably probable that petitioner would violate his parole or a law"—and did not provide an adequate explanation sufficient for judicial review). Here, for each of its findings, the board identified the particular facts and the particular criteria on which it relied in support of its conclusion that petitioner did not meet his burden of proving that he

---

[8] Despite petitioner's contentions, the board's discussion of the facts in relation to the criteria set out in OAR 255-032-0020 are findings, not conclusions. And, we have already determined that those challenged findings were supported by substantial evidence.

was capable of being rehabilitated. Nor do we consider this case to be one where the evidence weighs overwhelmingly in petitioner's favor. *Cf. id.* at 84 (noting that substantial reason does not exist when the "'credible evidence apparently weighs overwhelmingly in favor of one finding'" and the board makes another finding without providing an explanation). As such, the board's order is adequately supported by substantial reason.

Affirmed.