Argued and submitted May 24, 2016, affirmed September 13, 2017

## MICHAEL PAUL WILLE,
*Petitioner,*

*v.*

## BOARD OF PAROLE
## AND POST-PRISION SUPERVISION,
*Respondent.*

Board of Parole and Post-Prison Supervision
A156319

404 P3d 1042

Kristin A. Carveth, Deputy Public Defender, argued the cause for petitioner. With her on the opening brief was Peter Gartlan, Chief Defender, Office of Public Defense Services. Michael P. Wille filed the supplemental and reply briefs *pro se.*

Andrew M. Lavin, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Paul L. Smith, Deputy Solicitor General.

Before DeVore, Presiding Judge, Garrett, Judge, and Duncan, Judge pro tempore.*

---

* Garrett, J., *vice* Flynn, J. pro tempore.

## DeVORE, P. J.

Petitioner was convicted of aggravated murder and sentenced to life imprisonment.[1] He seeks review of an order of the Board of Parole and Post-Prison Supervision following a hearing held on July 18, 2012. ORS 163.105(2). In that order, the board found that petitioner had not proven by a preponderance of the evidence that he was likely to be rehabilitated within a reasonable period of time, and the board declined to change petitioner's terms of confinement to allow the possibility of parole or work release. The board also determined that, because it was not reasonable to expect petitioner to be granted a change in terms of confinement within four years, petitioner should not be granted another hearing before then. On review, petitioner contends that the board's findings are not supported by substantial evidence and its ultimate conclusion is not supported by substantial reason. ORS 183.482(8)(c). Petitioner also contends that the board erred when it deferred his next murder review hearing for four years because the determination was based on findings that were not supported by substantial evidence or substantial reason. OAR 255-032-0035.[2] We affirm.

---

[1] All citations to ORS 163.105 are to the version in effect when defendant committed his crime in 1989. At that time, ORS 163.105 provided, in relevant part:

"(2) At any time after 20 years from the date of imposition of a minimum period of confinement pursuant to subsection (1) of this section, the State Board of Parole, upon the petition of a prisoner so confined, shall hold a hearing to determine if the prisoner is likely to be rehabilitated within a reasonable period of time. The sole issue shall be whether or not the prisoner is likely to be rehabilitated within a reasonable period of time."

The Supreme Court recounted the facts relating to defendant's conviction and his sentencing in *State v. Wille*, 317 Or 487, 489, 858 P2d 128 (1993).

[2] In relevant part, OAR 255-032-0035 provides:

"If the Board finds that the inmate is not capable of rehabilitation, the Board shall deny the relief sought in the inmate petition. The Board may not grant a subsequent hearing that is less than two years, or more than 10 years, from the date the petition is denied.

"(1) The Board may not grant a hearing that is more than two years from the date a petition is denied unless the board finds that it is not reasonable to expect that the prisoner would be granted a change in the terms of confinement before the date of the subsequent hearing."

Relatedly, petitioner argues that he received an *ex post facto* increase in punishment when the board made him ineligible for another murder review hearing for four years, instead of the two years that governed at the time he committed the murder. We reject that argument without written discussion. *See Morrison*

We begin by reviewing for substantial evidence the board's findings in relation to the criteria under OAR 255-032-0020 relating to whether petitioner was likely to be rehabilitated in a reasonable time.[3] "On substantial evidence review, we must determine whether a reasonable person could make the findings that the board made, ORS 183.482(8)(c), and we do not substitute our own view of the evidence for the board's view of the evidence." *Dixon v. Board of Parole and Post-Prison Supervision*, 257 Or App 273, 278, 306 P3d 716, *rev den*, 354 Or 389 (2013); *see* ORS 183.482(8)(c)

---

*v. Board of Parole*, 277 Or App 861, 866, 374 P3d 948, *rev den*, 360 Or 465 (2016) (rejecting the petitioner's *ex post facto* challenge when the board made him ineligible for his next parole consideration hearing for six years even though the statute in effect at the time he committed his crime only permitted two years of ineligibility).

[3] This rule lists ten factors that the board may assess in determining whether an inmate is likely to be rehabilitated in a reasonable time. OAR 255-032-0020 states:

"The sole issue of the hearing described in OAR 255-032-0015 shall be to determine whether or not the inmate is likely to be rehabilitated within a reasonable period of time. Criteria indicating whether the inmate is likely to be rehabilitated prior to release include:

"(1) The inmate's involvement in correctional treatment, medical care, educational, vocational or other training in the institution which will substantially enhance his/her capacity to lead a law-abiding life when released;

"(2) The inmate's institutional employment history;

"(3) The inmate's institutional disciplinary conduct;

"(4) The inmate's maturity, stability, demonstrated responsibility, and any apparent development in the inmate personality which may promote or hinder conformity to law;

"(5) The inmate's past use of narcotics or other dangerous drugs, or past habitual and excessive use of alcoholic liquor;

"(6) The inmate's prior criminal history, including the nature and circumstances of previous offenses;

"(7) The inmate's conduct during any previous period of probation or parole;

"(8) The inmate does/does not have a mental or emotional disturbance, deficiency, condition or disorder predisposing them to the commission of a crime to a degree rendering them a danger to the health and safety of the community;

"(9) The adequacy of the inmate's parole plan including community support from family, friends, treatment providers, and others in the community; type of residence, neighborhood or community in which the inmate plans to live;

"(10) There is a reasonable probability that the inmate will remain in the community without violating the law, and there is substantial likelihood that the inmate will conform to the conditions of parole."

("Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding."). Under ORS 163.105(2)(a) it is petitioner's burden to prove that he is capable of rehabilitation in a reasonable time. Therefore, "we examine the record to determine if there was substantial evidence for a reasonable person to conclude that petitioner did not meet his burden," *i.e.*, substantial evidence for the board's contrary decision. *Dixon*, 257 Or App at 279.

First, petitioner challenges the board's findings under the fourth factor, regarding the "inmate's maturity, stability, demonstrated responsibility, and any apparent development in the inmate personality which may promote or hinder conformity to law." OAR 255-032-0020(4). He disputes the board's factual findings that he demonstrated a lack of empathy or remorse, exhibited a lack of insight and sensitivity, exhibited "a high level of criminal thinking errors," and failed to accept responsibility for his crime, "including the uncontroverted history of domestic violence with [the victim]." Petitioner contends that there is no evidence to support those findings given the contrary evidence in the record. He suggests that he expressed remorse at the hearing, and that his psychologists acknowledged his remorse and acceptance of responsibility in their evaluations. He also disputes that there is evidence in the record to support the board's negative characterization of his donation in the victim's name and a gift he gave to his daughters years ago. Petitioner contends that he acknowledged the pattern of domestic violence against the victim and has addressed it with his psychologists.

Petitioner is incorrect to suggest that, because there is evidence of his remorse and acceptance of responsibility, the board's contrary findings are not supported by substantial evidence. *See Weems/Roberts v. Board of Parole*, 347 Or 586, 602-03, 227 P3d 671 (2010) ("The fact that a reasonable person could also draw a contrary inference, or that reasonable persons might differ in their assessment of the strength of the inference * * * does not mean that the board's implicit finding in that regard is not supported by substantial evidence."). The board's findings could reasonably be made from evidence in the record, including petitioner's testimony

and demeanor at the hearing. The board made findings that petitioner "demonstrated a marked lack of empathy and remorse[.]" It found that he displayed a cold demeanor and had a self-centered "orientation" at the hearing. The board found that he showed his selfish and entitled attitude when he persisted in "parading" the victim's name in connection with donations that he has made, despite prior warnings from the board at his previous hearing that such actions were offensive, and when he gave a proud account of using deceit to give his daughters gifts despite their firm intentions to have no relationship with him.

Petitioner's argument is based in part on his psychologists' conclusions that he exhibited remorse and accepted responsibility—conclusions that the board could, and did, reasonably find were unreliable due to significant inconsistencies between the psychologists' accounts of the murder and information from other sources, including a post-sentence report done by the Department of Corrections in 1990.[4] Although petitioner's prison counselor, Dr. Newman, stated in his letter that petitioner "has constantly confessed guilt and taken total responsibility for the horrific consequences of his actions resulting in the death of his wife," the board could reasonably find, based on evidence at the hearing including petitioner's testimony, that he had not, in fact, done so. The board could reasonably find that there were inaccuracies in the psychologists' reports based on petitioner's false statements, misrepresentations, and minimizations that the psychologists took at face value.

The board could also reasonably find that petitioner had "failed to accept responsibility for the full range of his criminal behavior, including the uncontroverted history of domestic violence with" the victim, that petitioner lacked insight, and that petitioner had, "[t]o a substantial degree, * * * disassociated himself from the murder" and sees "the

---

[4] If an inmate is committed to the custody of the Department of Corrections without a presentence report, the department prepares a report of similar content to a presentence report for submission to the board. OAR 291-038-0040; *see also* ORS 144.185 (before making a determination about parole, the board may cause to be brought before it, among other things, a presentence report or a report of similar nature prepared by institutional staff).

spectrum of intimate partner violence that he perpetrated as separate from who he is." Those findings are supported by evidence in the record, in particular petitioner's testimony at the hearing, in which he failed to recognize that the murder was part of a pattern of domestic violence that he perpetrated against the victim. That pattern included previous assaults, death threats, and, after the victim had obtained a restraining order, a kidnapping that involved a firearm. Petitioner intimated that he does not or will not need domestic violence treatment unless he is in a future relationship.

Next, petitioner challenges the board's findings under the eighth factor, involving whether he has "a mental or emotional disturbance, deficiency, condition or disorder predisposing [him] to the commission of a crime to a degree rendering [him] a danger to the health and safety of the community." OAR 255-032-0020(8). He contends that the board erred when it rejected the opinions of two psychologists and pointed to no affirmative evidence that petitioner has any such deficiency.[5] Although the psychologists gave reports generally favorable to petitioner, one of them, Dr. Colistro, testified at the hearing about petitioner's narcissism and pride and his need for continued treatment. Specifically, Dr. Colistro testified that petitioner is narcissistic and that, if petitioner were to be released, he would recommend counseling specifically focusing on his narcissism. He further testified about the link between petitioner's pride and his crime, noting that "if he had been a humble man on that night, we wouldn't be sitting here[.]" The board may rely on some aspects of expert testimony without being

---

[5] We note that the board, citing OAR 255-032-0020(8), made a finding that petitioner "has a mental or emotional disorder predisposing him to the commission of a crime to a degree rendering him a danger to the health and safety of the community." That finding is a close paraphrase of that factor. At the conclusion of its discussion of that factor, however, it used a term associated with a different type of proceeding, when it found that "substantial evidence in the record support[ed] a finding that [petitioner] has a present severe emotional disturbance such as to constitute a danger to the health or safety of the community." *See* ORS 144.125(3)(a) (listed as one of the reasons to postpone inmate's release date). Because the board began by expressly making a finding that paraphrased and cited OAR 255-032-0020(8), and cited the same factor immediately after the later finding, we understand the board to have made a finding under OAR 255-032-0020(8)—the factor that it cited and had been discussing.

required to accept other aspects of the opinions expressed. Thus, Dr. Colistro's testimony together with other evidence in the record provides substantial evidence for the board's findings under this factor.

Next, petitioner contends that the board erred in applying the ninth factor, which concerns "[t]he adequacy of the inmate's parole plan including community support from family, friends, treatment providers, and others in the community; type of residence, neighborhood or community in which the inmate plans to live." OAR 255-032-0020(9). With respect to that factor, the board's order states, "Offender's parole plans are inadequate and do not demonstrate forethought or the intent to be self-reliant. After 23 years of incarceration, offender is proposing to reenter the community on subsidy and with just under $1,000 in savings."

Petitioner first argues that the board erred by focusing *"solely* on the amount of money petitioner has in his inmate account." (Emphasis by petitioner.) Although the board referred to the amount in petitioner's savings account, we do not understand the board to have focused "solely" on the issue of petitioner's savings. The board's order expressly refers to the lack of "forethought" and "intent to be self-reliant"—issues that were discussed in depth at the hearing and ranged well beyond the matter of his savings account. Read in the context of the order as a whole, and the proceedings more generally, we understand the reference to petitioner's account to have been illustrative of the inadequacy of his parole plan and not, as petitioner contends, the sole deficiency.

Petitioner further argues that "[t]he board's conclusion that petitioner's parole plans fail to demonstrate self-reliance, in light of his extensive employment history and family support upon release, is not supported by substantial evidence." We disagree. Notwithstanding the evidence favorable to petitioner, such as skills learned in prison, there was sufficient evidence in the record—including but not limited to petitioner's lack of savings, and his proposal to reenter the community based on food stamps and other subsidies—from which the board could have found as it did with regard to his intent to be self-reliant. *See Dixon*, 257 Or App at 278

("[W]e do not substitute our own view of the evidence for the board's view of the evidence.").[6]

Next, petitioner challenges the board's finding under the tenth factor, "that there is no reasonable probability that the offender would remain in the community without violating the law and that there is no substantial likelihood that offender would conform to the conditions of parole." The board based its finding on "the reasons discussed above" under the other factors. Petitioner argues that the board could not reasonably make this finding when he had no negative disciplinary history during his 23 years of incarceration, had the support of family upon release, had reports from psychologists concluding that he would not violate the law and would conform to the conditions of parole, and "had no significant criminal convictions before the murder."

We conclude, however, that there is substantial evidence for the board's finding based on evidence including petitioner's lack of insight, empathy, or remorse, his minimization of the crime, his failure to accept responsibility for the full extent of his criminal behavior, and his failure to address or have a plan to address his domestic violence issues. As noted, the board reasonably determined that petitioner's psychologists' conclusions were unreliable, and it did not accept them. Petitioner claims that his lack of other significant criminal convictions undercuts the board's finding. However, petitioner fails to mention his history of domestic violence that includes one assault in which the victim was knocked unconscious, a kidnapping involving a firearm and a death threat, and at least one documented violation of a restraining order. The board was particularly concerned about that history at the hearing, and its relationship to petitioner's crime.

Taken together, the four factors, supported by substantial evidence, support the board's ultimate conclusion, that petitioner failed to prove that he is likely to be rehabilitated within a reasonable time. Petitioner recognizes that

---

[6] Petitioner challenges the factual support for the board's finding that he lacked an intent to be self-reliant, but he does not dispute the relevancy of that fact to the inquiry under OAR 255-032-0020(9). We express no opinion on whether the rule requires or even contemplates that a petitioner must be "self-reliant."

the board relied on the four factors discussed above, but disagrees with the board's conclusion that the evidence shows that those factors "weigh so heavily against offender." As noted, however, the board's findings properly concern and determine petitioner's likelihood of rehabilitation. The board "is not required to rely on all of the criteria set out in OAR 255-032-0020 to support its ultimate conclusion, so long as that conclusion is supported by substantial evidence." *Dixon*, 257 Or App at 281 n 4. For our part, reweighing the evidence would be impermissible given our standard of review.

There is substantial reason for the board's order because it "articulates the reasoning that leads from the facts found to the conclusions drawn." *Dixon*, 257 Or App at 286 (internal quotation marks omitted). We do not consider this to be a case in which "the evidence weighs overwhelmingly in petitioner's favor." *Id.* at 288. There was certainly evidence in petitioner's favor, such as his participation in programs during incarceration, steady employment, support from family, and lack of disciplinary history. But, there was also much evidence weighing against petitioner. The board adequately explained the connection between the facts that it found and its conclusion that petitioner had not met his burden.

In his second assignment of error, petitioner contends that the board erred when it deferred his next murder review hearing for four years under OAR 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 on the grounds that the determination was based on findings that were not supported by substantial evidence or substantial reason. We do not reach the merits of petitioner's argument for procedural reasons. As it happens, petitioner has now received the murder review hearing that he contends he should have received earlier.[7] Because our resolution of petitioner's second assignment of error would have no practical effect, we decline to address it. *See Atkinson v. Board of Parole*, 280 Or App 410, 426, 382 P3d 567 (2016), *rev den*, 360 Or 851 (2017) (concluding that, even if the board erred in setting the petitioner's parole-release date too far in the

---

[7] We take judicial notice of the subsequent hearing in 2017 pursuant to OEC 201 (b), (c): http://www.oregon.gov/BOPPPS/Pages/ hearingschedule.aspx (with link to results of the May 2017 hearings - Wille decision).

future, his challenge was moot because "petitioner already ha[d] received the only relief to which he would be entitled if his view were to prevail on judicial review").

In sum, the board's order was supported by substantial evidence and substantial reason. That order properly determined that petitioner did not meet his burden to show, by a preponderance of the evidence, that he was likely to be rehabilitated within a reasonable period of time.

Affirmed.