EGAN, C. J.
*15 Petitioner is serving a life sentence for one count of aggravated murder. ORS 163.105 (1987).[1] In 2015, petitioner sought, for the third time, to convert the terms of his confinement to life imprisonment with the possibility of parole. After conducting a murder review hearing, the Board of Parole and Post-Prison Supervision (board) concluded that petitioner had failed to carry his burden of proving that he was likely to be rehabilitated in a reasonable period of time and, accordingly, declined to convert his aggravated murder sentence. ORS 163.105(2). Petitioner contends that the board's final order is not supported by substantial evidence or substantial reason and that the board thereby violated his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution. In our review under ORS 183.482(8)(c), we agree with petitioner that the board's order is based in part on a finding that is not supported by substantial evidence. Specifically, there is no evidence in the record to support the board's finding that petitioner's good behavior in prison was "eerily similar" to the behavior that led to his involvement in a brutal murder. We therefore remand for the board to reconsider its decision without relying on that erroneous factual finding.
In 1987, petitioner, a man named Montez, and the victim went to a motel room in Portland. After the three used drugs, Montez attacked the victim, and petitioner helped to subdue her by punching her in the face. Montez raped and brutally sodomized the victim. After the rape, petitioner assisted Montez in binding and gagging the victim, dragging her into the bathroom, and strangling her to death. Then, the two moved the victim's body to the bed, piled her personal belongings and the room's furniture on top of her, and set everything on fire. Petitioner and Montez fled out of state, but petitioner was arrested two months later and eventually convicted of one count each of aggravated murder, first-degree arson, and abuse of a corpse. For the count of aggravated murder, the trial court sentenced petitioner *16 to life imprisonment with a 30-year minimum term without the possibility of parole.[2] *81 In 2015, the board held a murder review hearing, at petitioner's request, regarding petitioner's aggravated murder sentence. The sole issue was whether petitioner was likely to be rehabilitated within a reasonable time. ORS 163.105(2).[3] The board considered each of the 10 factors in OAR 255-032-0020, the rule outlining criteria the board may use to determine whether a petitioner is likely to be rehabilitated. The board determined that some factors were neutral or weighed in petitioner's favor. However, the board concluded that several factors weighed so heavily against petitioner that he failed to carry his overall burden of proof. The board focused "in particular" on the factor in subsection (4) of OAR 255-032-0020 : petitioner's "maturity, stability, demonstrated responsibility, and any apparent development in the inmate personality which may promote or hinder conformity to law." The board also relied on petitioner's prior criminal history, his conduct during periods of probation or parole, his parole plan, and the likelihood that he would not conform to the conditions of parole.
In its final order, the board explained its factual findings and reasoning for why it concluded that petitioner failed to meet his overall burden of proving that he was likely to be rehabilitated within a reasonable period of time. With regard to petitioner's lack of maturity, stability, and demonstrated responsibility, the board explained that, in his testimony,
"[petitioner] intentionally left out detail to spare himself the humility of admitting that he had been involved in such a brutal and torturous act. [Petitioner] portrayed himself as the less culpable perpetrator. *** While [petitioner]
*17 may not be as culpable as his co-defendant [sic ], the factual record clearly establishes that [petitioner] was not a passive participant in this crime, and his minimization of his role in the murder at his latest hearing raises concern about how he has matured in the institution."
The board found that petitioner's omissions demonstrated a "lack of effort" to adequately address the personality characteristics that led him to commit his crime. Additionally, the board saw "no progress" in the qualities petitioner attributed his criminality to, namely, his desire to please others and his tendency to be a follower. The board found that petitioner "appeared to have spent his incarceration period focusing on his own perceived victimization and not the nature of his violence." For example, when the board asked why petitioner did not help the victim and instead assisted Montez, petitioner told the board he "just wanted to fit in."
The board found that while petitioner had letters of support stating that he is "trustworthy and extremely helpful, exhibits a willingness to do whatever is assigned to him, and works hard regardless of the task," those letters actually worked against petitioner. The board explained:
"Letter[s] of support for [petitioner] consistently note that [petitioner] is trustworthy and extremely helpful, exhibits a willingness to do whatever is assigned to him, and works hard regardless of the task. While the Board may view these types of recommendations favorably in most cases, in the case of [petitioner], this behavior is eerily similar to the [sic ] his stated lack of ability or willingness to assert himself when faced with moral challenges and remains consistent with his overwhelming desire to want to 'fit in.' "
As to petitioner's previous felony convictions, the board explained that petitioner "minimized" his conduct underlying those convictions, "disassociated himself from his abusive behavior," and concluded that he was "in denial about the extent of his misogynistic impulses and behavior." The board noted that petitioner was on probation when he committed the offense for which he is serving a life sentence and concluded that that factor weighed against him. The board also described petitioner's parole plan as "naïve *82 *18 regarding life on the outside," and noted that while petitioner had some support system, "the [b]oard viewed his failure to disclose the extent of his crime as resulting in relatively superficial relationships." Lastly, the board concluded that there was "no reasonable probability" that petitioner would remain in the community without violating the law or conditions of parole.
Petitioner timely sought administrative review, arguing that he "provided substantial and significant evidence" that proved he was likely to be rehabilitated within a reasonable period of time and that the board failed "to detail why the factors weighing against him constitute substantial reasoning in determining" otherwise. The board granted petitioner's request for administrative review but denied petitioner's request for relief. In its order, the board explained that, having fully evaluated petitioner's contentions based on the record, it adhered to the findings and conclusions articulated in the original order.
On judicial review, petitioner renews his argument that the board's order is not supported by substantial evidence or substantial reason. He also asserts that, because the board's conclusions are not supported by substantial evidence, its order violates his right to due process. For the following reasons, we conclude that one of the board's findings in its order is unsupported by substantial evidence. Because we cannot determine whether the board would have made its ultimate conclusion that petitioner failed to meet his burden of proving that he is capable of rehabilitation without that finding, we remand to the board for reconsideration.
On substantial evidence review, our task is to determine whether the record, viewed as a whole, would permit a reasonable person to make the factual findings that the board made. ORS 183.482(8)(c). We do not "substitute our judgment for that of agency decision-makers," but we do "take into account whatever evidence detracts from the weight of the evidence that supports the agency order." Castro v. Board of Parole , 232 Or. App. 75, 83, 220 P.3d 772 (2009). As noted above, in determining whether an inmate is likely to be rehabilitated within a reasonable time, the board considers factors including those set out in OAR 255-032-0020 :
*19 "(1) The inmate's involvement in correctional treatment, medical care, educational, vocational or other training in the institution which will substantially enhance his/ her capacity to lead a law-abiding life when released;
"(2) The inmate's institutional employment history;
"(3) The inmate's institutional disciplinary conduct;
"(4) The inmate's maturity, stability, demonstrated responsibility, and any apparent development in the inmate personality which may promote or hinder conformity to law;
"(5) The inmate's past use of narcotics or other dangerous drugs, or past habitual and excessive use of alcoholic liquor;
"(6) The inmate's prior criminal history, including the nature and circumstances of previous offenses;
"(7) The inmate's conduct during any previous period of probation or parole;
"(8) The inmate does/does not have a mental or emotional disturbance, deficiency, condition or disorder pre-disposing them to the commission of a crime to a degree rendering them a danger to the health and safety of the community;
"(9) The adequacy of the inmate's parole plan including community support from family, friends, treatment providers, and others in the community; type of residence, neighborhood or community in which the inmate plans to live;
"(10) There is a reasonable probability that the inmate will remain in the community without violating the law, and there is substantial likelihood that the inmate will conform to the conditions of parole."
The board "is not required to rely on all of the criteria set out in OAR 255-032-0020 to support its ultimate conclusion." Dixon v. Board of Parole and Post-Prison Supervision , 257 Or. App. 273, 281 n. 4, 306 P.3d 716, rev. den. , 354 Or. 389, 315 P.3d 420 (2013).
Petitioner argues first that the criteria the board considered favorably weigh heavily in his favor, and also that the criteria *83 not expressly addressed but discussed by the *20 board also weigh in his favor. The board contends that petitioner incorrectly focuses on whether the evidence was sufficient for the board to make the opposite findings, and that he improperly asks this court to weigh evidence when that is a task for the board. We agree with the board. On review, we do not reweigh the evidence. See Martin v. PSRB , 312 Or. 157, 167, 818 P.2d 1264 (1991) (declining the petitioner's invitation to weigh the evidence anew because that task is "exclusively within the province of [the agency]").
Thus, we turn to whether the board's findings are supported by substantial evidence. The board's ultimate conclusion was primarily based on its findings related to factors contained in subsections (4), (6), (7), (9), and (10). The board focused "in particular" on subsection (4), and made several findings related to that factor. We begin by addressing the evidence as to the board's findings under that subsection.
The board found that petitioner lacked maturity or responsibility under OAR 255-032-0020(4), based on its determination that he had not made progress towards addressing his personality characteristics of "desir[ing] to please others" and "tendency to be a follower." To petitioner, the board's negative portrayal of his record of being "trustworthy and extremely helpful, exhibit[ing] a willingness to do whatever is assigned to him, and work[ing] hard regardless of the task" while in prison "defies logic and common sense." Rather, to petitioner, those qualities are direct evidence of rehabilitation and "wholly positive." The board responds that petitioner's record of "diligence and dutifulness" were "ambiguous" in light of his history of "blindly following others and trying to fit in," and thus, the board contends that substantial evidence exists to support its finding.
We agree with petitioner. The board explicitly found that petitioner's consistent record of good conduct and hard work while incarcerated demonstrated by his letters of support, is evidence that petitioner lacks personal development towards becoming a law-abiding citizen, because it is "eerily similar" to the "lack of ability or willingness to assert himself when faced with moral challenges" and "desire to fit in" that led to him following the directions of his codefendant during a brutal murder. No reasonable factfinder could *21 make that finding. That is, no reasonable factfinder could infer that petitioner's compliance with lawful direction in a prison setting is "eerily similar" to his willingness to participate in rape and murder at the direction of a codefendant. Those are such dramatically different settings and circumstances that no reasonable person could equate them. To be sure, the letters themselves would not compel the board to conclude that petitioner had sufficiently addressed his desire to please others and his tendency to be a follower, but they are not, as the board found, affirmative proof that he still has the inability to assert himself when confronted with moral challenges.
Because the board's order does not disclose whether the board would have reached the same determination regarding petitioner's capacity for rehabilitation had it not relied on the erroneous factual finding, we must remand to the board to reconsider its decision without relying on that finding. See King v. Board of Parole , 283 Or. App. 689, 694, 389 P.3d 1171 (2017) (reversing and remanding because the board's order similarly did not disclose whether the board would have reached the same determination without the erroneous factual finding).
Reversed and remanded.

Since 1987, the legislature has modified ORS 163.105 on several occasions. Because defendant committed his crimes in 1987, we refer to the version of the statute that was in effect when defendant committed his crime.

Petitioner was also sentenced to a 20-year prison term and a five-year prison term for the other charges, to be served concurrently. Those two sentences have been completed and are not at issue on appeal.

Under ORS 163.105(2), after the completion of a minimum period of confinement,
"the State Board of Parole, upon the petition of a prisoner so confined, shall hold a hearing to determine if the prisoner is likely to be rehabilitated within a reasonable period of time. The sole issue shall be whether or not the prisoner is likely to be rehabilitated within a reasonable period of time."