***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

Argued and submitted February 2, affirmed September 27, 2023,
petition for review denied March 7, 2024 (372 Or 107)

TIMOTHY L. AIKENS,
*Petitioner,*

*v.*

BOARD OF PAROLE AND

POST-PRISON SUPERVISION,
*Respondent.*

Board of Parole and Post-Prison Supervision
A177497

Andrew D. Robinson, Deputy Public Defender, argued the cause for petitioner. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Emily N. Snook, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, and Mooney, Judge, and Pagán, Judge.

PAGÁN, J.

Affirmed.

**PAGÁN, J.**

Petitioner is serving a life sentence for aggravated murder. ORS 163.105 (1987).[1] In 2021, petitioner sought to convert the terms of his confinement to life imprisonment with the possibility of parole. After conducting a murder review hearing, the Board of Parole and Post-Prison Supervision (board) found that petitioner did not satisfy his burden of proving by a preponderance of the evidence that he is likely to be rehabilitated within a reasonable period of time. Petitioner assigns error to the board's overall decision, arguing that certain findings it made to arrive at that decision are not supported by substantial evidence or substantial reason. Having reviewed the record in light of our standard of review, we conclude that the board's order is supported by substantial evidence and substantial reason and, therefore, affirm.

In a prior opinion, we described the heinous crimes that resulted in petitioner's conviction:

"In 1987, petitioner, a man named Montez, and the victim went to a motel room in Portland. After the three used drugs, Montez attacked the victim, and petitioner helped to subdue her by punching her in the face. Montez raped and brutally sodomized the victim. After the rape, petitioner assisted Montez in binding and gagging the victim, dragging her into the bathroom, and strangling her to death. Then, the two moved the victim's body to the bed, piled her personal belongings and the room's furniture on top of her, and set everything on fire. Petitioner and Montez fled out of state, but petitioner was arrested two months later[.]"

*Aikens v. Board of Parole*, 298 Or App 14, 15-16, 446 P3d 79 (2019) (*Aikens II*).[2]

---

[1] Since 1987, the legislature has modified ORS 163.105 several times. Or Laws 1989, ch 720, § 1; Or Laws 1991, ch 126, § 8; Or Laws 1995, ch 421, § 2; Or Laws 1999, ch 59, § 31; Or Laws 1999, ch 782, § 5; Or Laws 2007, ch 717, § 1; Or Laws 2009, ch 660, § 6; Or Laws 2015, ch 820, § 45; Or Laws 2019, ch 634, § 27. Because defendant committed his crimes in 1987, we refer to the version of the statute that was in effect at that time.

[2] After a prior review hearing, petitioner sought judicial review, and we affirmed without issuing an opinion. *Aikens v. Board of Parole*, 275 Or App 22, 364 P3d 1012 (2015), *rev den*, 359 Or 39 (2016) (*Aikens I*). Petitioner again sought judicial review following a separate hearing, and we reversed and remanded. *Aikens v. Board of Parole*, 298 Or App 14, 15-16, 446 P3d 79 (2019) (*Aikens II*). In the meantime, there was another review hearing, petitioner sought judicial

In May 2021, the board held a review hearing for petitioner pursuant to ORS 163.105(2), which provides in part that, at any time after completion of a minimum of 30 years of confinement, the board, "upon the petition of a prisoner so confined, shall hold a hearing to determine if the prisoner is likely to be rehabilitated within a reasonable period of time." The board's decision was guided by OAR 255-032-0020, which provides, in part:

"Criteria indicating whether the inmate is likely to be rehabilitated prior to release include:

"(1)   The inmate's involvement in correctional treatment, medical care, educational, vocational or other training in the institution which will substantially enhance his/her capacity to lead a law-abiding life when released;

"(2)   The inmate's institutional employment history;

"(3)   The inmate's institutional disciplinary conduct;

"(4)   The inmate's maturity, stability, demonstrated responsibility, and any apparent development in the inmate personality which may promote or hinder conformity to law;

"(5)   The inmate's past use of narcotics or other dangerous drugs, or past habitual and excessive use of alcoholic liquor;

"(6)   The inmate's prior criminal history, including the nature and circumstances of previous offenses;

"(7)   The inmate's conduct during any previous period of probation or parole;

"(8)   The inmate does/does not have a mental or emotional disturbance, deficiency, condition or disorder predisposing them to the commission of a crime to a degree rendering them a danger to the health and safety of the community;

"(9)   The adequacy of the inmate's parole plan including community support from family, friends, treatment providers, and others in the community; type of residence, neighborhood or community in which the inmate plans to live;

---

review, and we affirmed. *Aikens v. Board of Parole*, 298 Or App 443, 443 P3d 748 (2019) (*Aikens III*). Petitioner also sought judicial review of the board's decision on remand from *Aikens II*, and we affirmed without issuing an opinion. *Aikens v. Board of Parole*, 314 Or App 879, 495 P3d 165 (2021) (*Aikens IV*).

"(10)   There is a reasonable probability that the inmate will remain in the community without violating the law, and there is substantial likelihood that the inmate will conform to the conditions of parole."

After the hearing, the board found that four of those factors weighed in favor of petitioner and two factors were neutral. However, the board found that the fourth (maturity/responsibility), fifth (substance abuse), seventh (probation conduct), and tenth (probability that inmate will be law-abiding) factors weighed against petitioner. As a result, the board concluded that petitioner had not met his burden of showing that he could be rehabilitated within a reasonable period of time. Petitioner sought administrative review and the board denied relief. Petitioner now seeks judicial review.

In a single assignment of error, petitioner asserts that the board erred by finding that he had not proven that he was likely to be rehabilitated within a reasonable period of time. More specifically, he argues that the board's findings regarding certain factors it considered are not supported by substantial evidence or substantial reason. We disagree.

Our decision is controlled by the standard of review. When reviewing the board's order, we "may affirm, reverse or remand the order on the same basis as provided in ORS 183.482(8)." ORS 144.335(3). Under ORS 183.482(8)(c), we must set aside or remand the order if we find "that the order is not supported by substantial evidence in the record. Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding." On a review for substantial evidence, "[w]e consider both the evidence that supports and detracts from the board's findings." *Mendacino v. Board of Parole*, 287 Or App 822, 834, 404 P3d 1048 (2017), *rev den*, 362 Or 508 (2018). However, we "defer to the board's reasonable inferences without reweighing the evidence in the record ourselves." *Id*. "Where a petitioner argues that an order is not supported by substantial evidence, a court will also review the order for substantial reason to ensure that the order articulates the reasoning that leads from the facts found to the conclusions drawn." *Dixon v. Board of Parole*,

257 Or App 273, 286, 306 P3d 716, *rev den*, 354 Or 389 (2013) (internal quotation marks omitted).

In its order explaining that petitioner had not persuaded the board that he is likely to be rehabilitated within a reasonable period of time, the board focused primarily on OAR 255-032-0020(4), which concerns "[t]he inmate's maturity, stability, demonstrated responsibility, and any apparent development in the inmate personality which may promote or hinder conformity to law." The board emphasized the horrendous nature of petitioner's crimes and his answers to questions posed during the hearing, which demonstrated a "shallow understanding of his criminal conduct." The board determined that petitioner had not developed a high degree of insight regarding his capacity for such violence, and it was not persuaded that petitioner had addressed all of the risk factors that led him to participate in the crimes.

Petitioner argues that those findings are not supported by substantial evidence or substantial reason. In 2012, as part of a psychological evaluation, petitioner explained that, at the time of the murder and arson, he had been drinking alcohol and he was under the influence of heroin and cocaine. At the hearing, petitioner further explained that "most of it was methamphetamines, but there was also heroin and cocaine mixed in." Petitioner had also told the psychologist that he was unduly influenced by and scared of Montez, the other participant in the crimes.

In his brief on judicial review, petitioner argues that "the only evidence in the record on the issue tends to show that there may not be anything more that petitioner can say to explain the crime beyond the factors he has already cited. Specifically, Dr. Cooley evaluated petitioner in 2013 and expressed the opinion that because the crime was a 'senseless' one, 'it may be that there is no explanation beyond [that] which [petitioner] is able to provide.'"[3] However, the board's findings were reasonable because simply suggesting that petitioner has reached his capacity in terms of understanding his involvement in the crimes does not equate to demonstrating that he is likely to be rehabilitated.

---

[3] Petitioner was evaluated by the psychologist in May 2012, but the report did not issue until February 2013.

The board could not ignore that petitioner's crimes, which we briefly described earlier, were extremely brutal. Considering those facts, and the level of brutality he displayed toward the victim, it was reasonable for the board to conclude that petitioner's understanding of the crimes and his reliance on a psychological evaluation from 2013 did not satisfy his burden of showing that he is likely to be rehabilitated within a reasonable period of time. Since his incarceration, petitioner has committed to sobriety, and he has maintained a perfect disciplinary record. Nevertheless, it was reasonable for the board to conclude that petitioner has not sufficiently changed if petitioner still could not appreciate or understand his role in committing those crimes. Petitioner's crimes were horrendous, and he failed to convince the board that he has developed an understanding of how he was capable of involvement in crimes that dehumanized the victim and exhibited a profound lack of respect for her dignity as a human being. Thus, it was reasonable for the board to find that the fourth (maturity/responsibility) and tenth (probability that inmate will be law-abiding) factors weighed against petitioner.

Petitioner argues that the board's findings that the fifth (substance abuse) and seventh (probation conduct) factors weighed against him are not supported by substantial evidence or substantial reason. In so arguing, petitioner relies on, among other considerations, his sobriety while incarcerated, the fact that his probation revocation occurred so long ago, and the minor nature of the probation violation. However, there is substantial evidence to support the board's findings regarding the fifth (substance abuse) and seventh (probation conduct) factors, and the board adequately explained how the facts led to its conclusions regarding those factors. There is room for debate as to whether the fifth and seventh factors are neutral or weigh against petitioner, but resolving that question was for the board, and we cannot reweigh the evidence. *Mendacino*, 287 Or App at 834.

Regarding the fifth factor, it specifically identifies *past* use of drugs and alcohol as a relevant consideration, which suggests that the board understood that an inmate is unlikely to have a continuing drug and alcohol use problem

while incarcerated. More importantly, by his own admission, petitioner's use of drugs and alcohol was highly relevant to the brutal nature of the crimes that he engaged in. Thus, it was reasonable for the board to note that petitioner suffered from past drug and alcohol use, and the fifth factor was a negative for him in the calculus.

A similar analysis applies regarding petitioner's probation violation. Although it may have more limited relevance because of how long ago it occurred, there is evidence in the record that petitioner's probation was revoked, and the board was entitled to consider that factor as part of its evaluation. Furthermore, as pointed out in *Dixon*, 257 Or App at 282, murder review hearings always occur a long time after the conduct at issue, but the board is nevertheless permitted to assess the import of that past conduct. In sum, the board appropriately considered the relevant factors. We cannot say that it was unreasonable for the board to conclude that petitioner failed to meet his burden of proving that he is likely to be rehabilitated within a reasonable period of time.

Affirmed.