Argued and submitted May 24, 2011, affirmed February 15, 2012

John STEELE,
*Petitioner,*

*v.*

WATER RESOURCES COMMISSION;
Water Resources Department;
and Symbiotics, LLC,
*Respondents.*

Oregon Water Resources Department
HE559; A144766

273 P3d 243

William C. Carpenter, Jr., argued the cause and filed the briefs for petitioner.

Erin C. Lagesen, Assistant Attorney General, argued the cause for respondents Water Resources Commission and Water Resources Department.

Robyn Ridler Aoyagi argued the cause for respondent Symbiotics, LLC. With her on the brief was Tonkon Torp LLP.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

NAKAMOTO, J.

## NAKAMOTO, J.

Petitioner John Steele seeks judicial review of a final order in which the Water Resources Department determined, in accordance with ORS 543.255, that a proposed hydroelectric project at the Dorena Dam on the Row River in Lane County does not have impacts that are cumulative with those of other existing or proposed hydroelectric projects in the same river basin. Based on that determination, the department in its order concluded that it was not necessary to hold a consolidated contested case hearing to review those cumulative impacts. Because petitioner has neither challenged the decision declining to hold a consolidated contested case review, nor established that any of the issues he raises on judicial review, even if well taken, would affect the validity of the order that he protests, we reject petitioner's preserved assignment of error and therefore affirm the final order under review.

Because we decide the case based on the issues that were before the department in the order that we review, we state the facts with a focus on the procedural history of the case. The United States Army Corps of Engineers (the Corps) built the Dorena Dam in 1949 without providing for either fish passage or hydroelectric production. Respondent Symbiotics, LLC (Symbiotics), a hydroelectric developer, now seeks to build a hydroelectric facility at the dam. Symbiotics has received the necessary federal license, but it also needs approval from the department to appropriate water flow through the dam for the project. It therefore applied for a state license.

The primary criteria for the department's consideration in acting on Symbiotics's application for a license are set forth in ORS 543.017, ORS 543.225, and ORS 543.255. Under ORS 543.225(1), the Water Resources Commission must hold a public hearing on the license application to determine whether the proposed project would impair or be detrimental to the public interest. Criteria that the commission must consider in making that determination are located in ORS 543.225(3).[1]

---

[1] ORS 543.225(3) provides that, in "determining whether the proposed project would impair or be detrimental to the public interest, the commission shall have due regard for" the following:

Further, the commission must follow the minimum standards in ORS 543.017(1)[2] with regard to fish and other natural resources in any action relating to the development

"(a) Conserving the highest use of the water for all purposes, including irrigation, domestic use, municipal water supply, power development, public recreation, protection of commercial and game fishing and wildlife, fire protection, mining, industrial purposes, navigation, scenic attraction or any other beneficial use to which the water may be applied for which it may have a special value to the public.

"(b) The maximum economic development of the waters involved.

"(c) The control of the waters of this state for all beneficial purposes, including drainage, sanitation and flood control.

"(d) The amount of waters available for appropriation for beneficial use.

"(e) The prevention of wasteful, uneconomic, impracticable or unreasonable use of the waters involved.

"(f) All vested and inchoate rights to the waters of this state or to the use thereof, and the means necessary to protect such rights.

"(g) The state water resources policy formulated under [various statutes]."

[2] ORS 543.017(1) provides:

"In order to carry out the policy set forth in ORS 543.015, the following minimum standards shall apply to any action of the Water Resources Commission relating to the development of hydroelectric power in Oregon:

"(a) The anadromous salmon and steelhead resources of Oregon shall be preserved. The commission shall not approve activity that may result in mortality or injury to anadromous salmon and steelhead resources or loss of natural habitat of any anadromous salmon and steelhead resources except when an applicant proposes to modify an existing facility or project in such a manner that can be shown to restore, enhance or improve anadromous fish populations within that river system.

"(b) Any activity related to hydroelectric development shall be consistent with the provisions of the Columbia River Basin Fish and Wildlife Program providing for the protection, mitigation and enhancement of the fish and wildlife resources of the region as adopted by the Pacific Northwest Electric Power and Conservation Planning Council pursuant to Public Law 96-501.

"(c) Except as provided in this paragraph, no activity may be approved that results in a net loss of wild game fish or recreational opportunities. If a proposed activity may result in a net loss of any of the above resources, the commission may allow mitigation if the commission finds the proposed mitigation in the project vicinity is acceptable. * * *

"(d) Other natural resources in the project vicinity, including water quality, wildlife, scenic and aesthetic values, and historic, cultural and archaeological sites, shall be maintained or enhanced. No activity may be approved that, in the judgment of the commission after balancing gains and losses to all affected natural resources, may result in a net loss of natural resources. * * *

"(e) In determining whether it is in the public interest to allocate water for a proposed hydroelectric development, the commission shall consider present and future power needs and shall make a finding on the need for the power. * * *"

of hydroelectric power in Oregon, and ORS 543.225(2) requires the commission to determine that a project complies with those standards before it issues a license. If the project does not comply, the commission must reject the application or else require modifications to conform to the public interest. ORS 543.225(2). Additionally, as explained in more detail below, ORS 543.255 requires the commission to consider the cumulative impacts of the project in conjunction with other existing and proposed hydroelectric projects.

On September 30, 2008, the department issued two proposed final orders on the Dorena Dam project. The first was a Proposed Final Order on Public Interest Issues (the Public Interest Order), which dealt with the issues that arose under ORS 543.017 and ORS 543.225. After extensively discussing the facts that it found to be relevant, the department proposed to determine that the project met the statutory criteria and that a license from the state that granted a water right for the project's operation should issue. It proposed the following final order:

> "Based on the findings and conclusions, the public interest standards of ORS 543.017 and 543.225 have been met with regards to the proposed [p]roject. A new hydroelectric license may be issued for the [p]roject.
>
> "As a condition of the water right, the applicant shall provide evidence that land use approval has been received from Lane County before construction or operation of the hydroelectric project is begun."

The proposed order also described the procedure for a person to protest it and obtain a contested case hearing.

The second proposed final order, the Cumulative Impacts Order, dealt with the issues that arose under ORS 543.255(1). That provision comes into play whenever the department receives an application to appropriate water for a hydroelectric project. *Id.* It required the department to consider whether the Dorena Dam project would have impacts that were cumulative with

> "(a) Impacts of other proposed hydroelectric projects for which an application is pending before the department; or

"(b)    Existing hydroelectric projects in the same river basin."

*Id.* Under the statute, if the department "determines that there is no possibility that the hydroelectric projects proposed in pending applications or existing projects may have cumulative effects, the Water Resources Director shall issue an order setting forth the department's determination that there are no cumulative effects and the department's decision that consolidated review is not required." ORS 543.255(2). On the other hand, if the department determines that there "may" be cumulative effects, the commission "shall conduct a consolidated review before approving any application in the affected river basin." ORS 543.255(3). "[T]he consolidated review process shall be conducted as a contested case hearing" under the Oregon Administrative Procedures Act (APA) and "shall include a study of the individual and cumulative effects of proposed hydroelectric projects for which applications are pending before the department and existing hydroelectric projects." *Id.*

In the Cumulative Impacts Order, the department described other hydroelectric projects in the Willamette River Basin. Because of those other projects, the department had to apply the presumption established in its governing rule, OAR 690-051-0290(1), the pertinent part of which provides:

"It is presumed that if there are other existing, approved or proposed [hydroelectric] projects, in the same river basin, there is a potential for cumulative impacts. This presumption may be rebutted by showing the impacts of the proposed project are so small in extent, short-termed or localized that there is no reasonable likelihood of cumulative impacts."

In the Cumulative Impacts Order, the department repeated its discussion of the relevant facts that it had reviewed and found when it made the Public Interest Order. It did so as part of its determination that the impacts of the Dorena Dam project were "so small in extent, short-termed or localized" that there was no reasonable likelihood that they would be cumulative with those of other projects, as provided in OAR 690-051-0290(1).

Thus, the department determined that the presumption of combined effects was rebutted and that it was unnecessary to undertake a consolidated review of the combined impacts of the proposed hydroelectric project and other projects in the Willamette River Basin. The department concluded the Cumulative Impacts Order with the following proposed order:

> "Based upon the above findings and conclusions, the presumption that the proposed project may contribute to cumulative impacts with other existing, approved or proposed hydroelectric projects in the same river basin is rebutted and a consolidated review is not required."

As with the Public Interest Order, the department provided petitioner with information on how to protest the Cumulative Impacts Order and receive a contested case hearing.

The two orders, thus, were identical in most of their findings and conclusions. However, the dispositive portions were distinct. The Public Interest Order resolves the broad issues that arose under ORS 543.017 and ORS 543.225. Most significantly, it was the Public Interest Order that proposed to authorize issuing a license for the project. On the other hand, the dispositive portion of the Cumulative Impacts Order dealt only with the issue of whether the department was required to hold a consolidated hearing. For reasons that do not appear in the record, petitioner, who was acting *pro se*, filed a protest against the Cumulative Impacts Order but did not file one against the Public Interest Order.

The department referred petitioner's protest to the Office of Administrative Hearings, which assigned an administrative law judge (ALJ) to conduct a contested case hearing. After consultation with the parties, the ALJ scheduled the time for prehearing motions and described the issues petitioner raised through his protest for the hearing. The potential hearing issues dealt with whether the project complied with various statutes and rules concerning fish resources, water quality, geologic stability, and ongoing monitoring. None of the issues dealt with whether there was a possibility of cumulative impacts with other existing or proposed hydroelectric projects.

All parties filed prehearing motions for summary determination. Symbiotics argued that the case was limited to the Cumulative Impacts Order, and petitioner therefore was obliged to "specifically link the issues he has raised to this particular agency decision." Symbiotics further argued that the issues petitioner raised had been fully reviewed and resolved in a number of forums and so no disputed issues remained relevant to the legal issue presented by the Cumulative Impacts Order. The department argued in its summary determination motion that other state and federal agencies had already approved various conditions for the construction and operation of Symbiotics's project that petitioner challenged in his protest. The department argued that those conditions would offset any impacts of the project, thereby rendering the impacts so limited that no consolidated review should be required. In his motion, petitioner argued that the Cumulative Impacts Order lacked findings concerning the project's compliance with standards for water quality and geologic stability, safety for anadromous salmon and steelhead, and compliance with fishery management plans and programs.

In April 2009, the ALJ granted the department's and Symbiotics's motions for summary determination and denied petitioner's motion. The ALJ entered a proposed final order determining that a consolidated review of impacts was not necessary. The ALJ determined that the proper river basin for consideration was the Coast Fork Willamette River subbasin rather than the Willamette River Basin in its entirety. In that subbasin, she found, there were no other existing or proposed hydroelectric projects. Thus, no consolidated review was necessary. OAR 690-051-0290(1). The ALJ further pointed out that petitioner had never raised or addressed the issue of cumulative impacts with other hydroelectric projects, the subject matter of the Cumulative Impacts Order at issue in his contested case. Rather, she stated, petitioner had attempted to make collateral attacks on other proposed orders issued by the department, *i.e.*, the Public Interest Order, and by other agencies that had evaluated the project. Petitioner filed exceptions to the ALJ's proposed final order.

After considering petitioner's exceptions, in October 2009, the department issued a proposed modification of the

ALJ's order. The key proposed change was to the ALJ's findings that there was only one dam in the subbasin, which had no hydroelectric project, and that there were no other proposed hydroelectric projects in the subbasin. The department described several small hydroelectric projects on tributaries to tributaries of the Row River well above Dorena Dam. And, because of the presence of other hydroelectric projects in the subbasin, the department addressed the presumption of potential cumulative impacts. In the next step of its analysis, in accordance with OAR 690-051-0290, the department found that the impacts of the Dorena Dam project itself were "so small in extent, short-termed, or localized that there [was] no reasonable likelihood that the project * * * [would] result in cumulative impacts" and, thus, that the presumption of cumulative impacts was rebutted.

The department also modified the ALJ's proposed order by providing additional explanation regarding issues that petitioner raised in his original protest and motion for summary determination, such as water quality and compliance with statutes and rules concerning fish resources. At the same time, though, the department noted that it had decided to provide the added explanation despite petitioner's improper collateral attack on orders by other agencies and notwithstanding that the issues he had presented failed as a matter of law.

In December 2009, the department issued a Final Order in Contested Case in which it denied petitioner's exceptions to the ALJ's proposed order as modified and authorized issuance of a Final Order on Potential for Cumulative Impacts Dorena Lake Dam (Final Cumulative Impacts Order). The Final Cumulative Impacts Order contained the department's revision of the original Cumulative Impacts Order. Together, the orders constituted the department's final decision on the cumulative impacts issue. In the dispositive portion of the Final Cumulative Impacts Order, the department stated that "the presumption that the proposed project may contribute to cumulative impacts with other existing, approved or proposed hydroelectric projects in the same river basin is rebutted. A consolidated review is not required."

Petitioner now seeks review of the Final Order in Contested Case, which incorporated the Final Cumulative Impacts Order. On review, he raises four assignments of error relating to minimum standards for hydroelectric projects, ORS 543.017(1), or to fish passage: (1) that a new hydroelectric project installed in an existing dam is not an "existing facility" under ORS 543.017(1)(a); (2) that it was error to fail to find that the project's protections for fish are consistent with the Columbia River Basin Fish and Wildlife Program under ORS 543.017(1)(b); (3) that it was error to permit a speculative mitigation program; and (4) that it was error to find that the project is consistent with the Oregon Department of Fish and Wildlife's fishery management plans. According to petitioner, some of these assignments present questions of law, and some present challenges to the sufficiency of the evidence supporting the department's findings and conclusions.

As for his requested relief, petitioner begins his opening brief by stating that he seeks to have "the final order granting both the water right and the license set aside on grounds it was issued contrary to Oregon law and was not supported by substantial evidence." But that determination was not made in the order before us. As noted, the Final Order in Contested Case under review concerns whether a cumulative impacts review is necessary. The Public Interest Order, which petitioner never challenged, allowed issuance of the license and the state water right based on the project's compliance with the minimum standards for hydroelectric projects and relevant safeguards for fish and other natural resources.

Petitioner concludes his opening brief by asking this court to remand the case with instructions to modify the findings of fact and conclusions of law he challenges in his assignments of error. Petitioner similarly urges the court to "remand the order" in his reply brief. Thus, it appears that petitioner does not seek to change the department's order that Symbiotics's project does not have cumulative impacts with other hydroelectric projects in the same river basin, nor does he seek a consolidated review of those projects. He fails to assert that changing the findings and conclusions in the

ways that he proposes would have any effect on the department's decision not to hold a consolidated review.

The difficulty for petitioner is that we review an agency's findings of fact and conclusions of law to determine whether they support, or fail to support, the action that the agency took—that is, the agency's final order. Under the APA, a "final order" means "final agency *action* expressed in writing." ORS 183.310(6)(b) (emphasis added). The heart of a final order, thus, is the final agency action. The purpose of the agency's findings and conclusions is to explain and to justify the agency's action. Under ORS 183.470(2), the final order must

> "be accompanied by findings of fact and conclusions of law. The findings of fact shall consist of a concise statement of the underlying facts supporting the findings as to each contested issue of fact and as to each ultimate fact *required to support the agency's order*."

(Emphasis added.) The agency's findings and conclusions are not free-standing; they are significant only to the degree that they do or do not support the agency's order.

The requirement that an agency's factual findings and legal conclusions support its final order is directly tied to our authority to review that final order. A court reviewing the legal conclusions in an agency's final order may

> "affirm, reverse or remand the order. If the court finds that the agency has erroneously interpreted a provision of law *and that a correct interpretation compels a particular action, the court shall*:
>
> "(A)  Set aside or modify the order; or
>
> "(B)  Remand the case to the agency for further action under a correct interpretation of the provision of law."

ORS 183.482(8)(a) (emphasis added). As the emphasized portion of ORS 183.482(8)(a) indicates, even if the agency has interpreted the law incorrectly, we may set aside or modify its order, or remand the case to the agency, only if a correct interpretation compels the agency to take a particular action that is different from the action that it has already taken or, at the least, to reconsider that action.[3]

---

[3] This is to be distinguished, of course, from circumstances in which, as the result of an error of law, the order lacks substantial reason. Here, as previously

If a correct interpretation of the law would not or could not affect the agency's action, we have no statutory authority to do anything to the order on review. *Id.* Thus, in *Shank v. Board of Nursing*, 220 Or App 228, 237-38, 185 P3d 532 (2008), we rejected one of the petitioner's assignments of error as to the agency's discovery ruling when she failed to challenge all grounds for the ruling, and, thus, failed to demonstrate to this court that, even if the alleged error had merit, "such an error would compel any different action by the board." *See also Metco Mfg. v. Bureau of Labor and Industries*, 93 Or App 317, 320, 761 P2d 1362 (1988) (declining to decide the petitioner's assignment of error concerning authority of a referee to rule on a motion instead of the agency's commissioner; where the commissioner entered the final order and took action on behalf of the agency, the referee's authority to make the initial ruling did not matter).

In this case, petitioner states that we should review his first two assignments of error for errors of law. That is review under ORS 183.482(8)(a). He does not ask us to remand the case to the department for further action under a correct interpretation of the provisions of law he raises, nor does he ask us to set aside the department's final order regarding consolidated review. Instead, petitioner requests that we order the department to modify portions of the bases for the orders; however, he fails to establish, or even to suggest, how correcting the alleged errors would affect the department's order that consolidated review is not necessary. The effect of his assignments of error is not readily discernable given the department's unchallenged determination as a predicate to the final order that the project's impact was so "small in extent, short-termed *or* localized" that there was no reasonable likelihood of cumulative impacts. (Emphasis added.)

Petitioner states that we should review his third and fourth assignments of error under the substantial evidence standard of ORS 183.482(8)(c). That provision states that the reviewing court shall set aside or remand the order "if the

noted, petitioner is not challenging the board's reasoning regarding the conclusion not to hold a consolidated review; indeed, petitioner does not challenge that legal conclusion at all. 248 Or App at 238.

court finds that *the order* is not supported by substantial evidence in the record." (Emphasis added.) It is the order that must be supported by substantial evidence. We may not set aside or remand a final order, even if some findings are not supported by substantial evidence, unless the erroneous findings somehow affect the validity of the order. *Id.* Again, however, petitioner asks only that we remand with directions to the department to change allegedly erroneous findings regarding a mitigation program and the project's compliance with fish passage under certain fishery management plans. And assuming petitioner is correct that the assignments concern factual findings, he does not suggest how our determination that the findings were erroneous would deprive the department's challenged order of substantial evidentiary support.[4] He also does not ask us to set aside the order that a consolidated review of combined impacts is unnecessary.

For their part, respondents Symbiotics and the department argue variously that, except for petitioner's second assignment, he failed to preserve his assignments of error and to exhaust his administrative remedies; the department properly construed the law; and the challenged portions of the final order are supported by substantial evidence. To some extent, respondents suggest that petitioner's assignments are inappropriate by arguing that other orders have already approved conditions for the project in compliance with federal and state fish and wildlife protections. But they primarily contend that the assignments of error lack merit, not that a meritorious assignment would have no bearing on the department's action in the final order. Respondents take no position in this court as to whether any success by petitioner on judicial review would permit or require the department to engage in a consolidated review of project impacts.

---

[4] Specifically, petitioner contends in his third assignment of error that the commission should have concluded that Symbiotics's agreement to pay for salmon restoration work with the Oregon Department of Fish and Wildlife was too vague to meet the standard in ORS 543.017(1)(a) that the project was going to "restore, enhance or improve anadromous fish populations" in the river. In his fourth assignment, he contends that, despite the fact that the dam was not constructed to allow fish passage, the commission wrongly found that Symbiotics's project met various regulatory requirements for fish passage in fishery management plans. These assignments of error appear to raise questions of law, not fact.

We agree with respondents that petitioner preserved only his second assignment of error. As to his other assignments of error, petitioner did not timely raise his arguments in his contested case before the department.

As noted, petitioner's second assignment related to the Columbia River Basin Fish and Wildlife Program. Petitioner alleges that the department erred by interpreting ORS 543.017(1)(b) to allow a hydroelectric development without specifically finding that the development conditions include the "best available means for aiding downstream and upstream passage of anadromous and resident fish." Based on that provision of the Columbia River Basin Fish and Wildlife Program, he argues that, regardless of a federal agency's order approving the project and the department's agreement with it, the department's failure to require Symbiotics to create a fish passage over the Dorena Dam as part of its hydroelectric project violated the requirements of the program and, thus, of the statute. Although he preserved his second assignment of error, we decline to reach its merits.

Petitioner's choice to challenge only the final order as to cumulative impacts presents a fundamental problem on review. That order is not the proper vehicle to have us set aside the final order that granted issuance of the license to Symbiotics, petitioner's apparent ultimate objective. A determination that any of petitioner's assignments of error was well taken[5] might have been a basis for reversing or remanding the department's conclusion in the Public Interest Order that "the public interest standards of ORS 543.017 and 543.225 have been met with regards to the proposed [p]roject" and that the department may issue a license for that project. The Public Interest Order, however, is not before us; the Final Cumulative Impacts Order is.

Fundamentally, petitioner fails to focus on the final order at issue in this case, in which the agency ruled that a consolidated review proceeding was unnecessary. Petitioner made no showing of possible cumulative impacts of the other hydroelectric projects in the subbasin, nor has he challenged

---

[5] We do not suggest that petitioner's second assignment of error was meritorious.

the department's determination that the project's impact was so "small in extent, short-termed or localized" that a cumulative impacts review was unnecessary. We reject his second assignment of error as ungrounded in our scope of review of an agency order.

Affirmed.