338 February 28, 2024 No. 154

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

MICHAEL PAUL WILLE,
*Petitioner,*

*v.*

BOARD OF PAROLE AND POST-PRISON
SUPERVISION,
*Respondent.*

Board of Parole and Post-Prison Supervision
A178249

Submitted August 10, 2023.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Stacy M. Du Clos, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Greg Rios, Assistant Attorney General, filed the brief for respondent.

Before Shorr, Presiding Judge, Mooney, Judge, and Pagán, Judge.

MOONEY, J.

Affirmed.

**MOONEY, J.**

Petitioner murdered his wife more than three decades ago, fueled by his abuse of alcohol and an escalating cycle of domestic violence. On the day of the murder, petitioner broke through a glass door at his mother-in-law's home where his wife and daughters were staying. He grabbed his wife and forced her to his car, stabbed her twice as she attempted to escape, and then chased her into a neighbor's home where he continued to stab her and then slit her throat in front of the neighbor and his children. Petitioner was subsequently convicted of aggravated murder and sentenced to life in prison. The Board of Parole and Post-Prison Supervision (board) held its fourth "murder review" hearing in 2021, after which it concluded that petitioner had not met his burden to prove by a preponderance of the evidence that he is likely to be rehabilitated within a reasonable period of time, and it denied his request for a change in the term of his prison sentence. Petitioner seeks judicial review of the board's final order, contending that the order is not supported by substantial evidence or reason. We affirm.[1]

This was petitioner's fourth review hearing. The board conducted the hearing at petitioner's request, pursuant to ORS 163.105.[2] The purpose of the hearing was to

---

[1] Petitioner also argues that because the board's order lacks substantial evidence and reason, the order violates his rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Because we conclude that the order is supported by substantial evidence and reason, it necessarily does not violate petitioner's due process rights.

[2] ORS 163.105 has been amended since defendant committed his crime; however, because those amendments do not affect our analysis, we refer to the current version of the statute.

ORS 163.105 provides, as relevant:

"(2) At any time after completion of a minimum period of confinement pursuant to subsection (1)(c) of this section, the State Board of Parole and Post-Prison Supervision, upon the petition of a prisoner so confined, shall hold a hearing to determine if the prisoner is likely to be rehabilitated within a reasonable period of time. The sole issue is whether or not the prisoner is likely to be rehabilitated within a reasonable period of time. At the hearing, the prisoner has:

"(a) The burden of proving by a preponderance of the evidence the likelihood of rehabilitation within a reasonable period of time;

"* * * * *

"(3) If, upon hearing all of the evidence, the board * * * finds that the prisoner is capable of rehabilitation and that the terms of the prisoner's

determine whether he is likely to be rehabilitated within a reasonable period of time. OAR 255-032-0020 provides the following nonexclusive list of factors for the board to consider as it reaches its decision:

"(1)   The inmate's involvement in correctional treatment, medical care, educational, vocational or other training in the institution which will substantially enhance his/her capacity to lead a law-abiding life when released;

"(2)   The inmate's institutional employment history;

"(3)   The inmate's institutional disciplinary conduct;

"(4)   The inmate's maturity, stability, demonstrated responsibility, and any apparent development in the inmate personality which may promote or hinder conformity to law;

"(5)   The inmate's past use of narcotics or other dangerous drugs, or past habitual and excessive use of alcoholic liquor;

"(6)   The inmate's prior criminal history, including the nature and circumstances of previous offenses;

"(7)   The inmate's conduct during any previous period of probation or parole;

"(8)   The inmate does/does not have a mental or emotional disturbance, deficiency, condition or disorder predisposing them to the commission of a crime to a degree rendering them a danger to the health and safety of the community;

"(9)   The adequacy of the inmate's parole plan including community support from family, friends, treatment providers, and others in the community; type of residence, neighborhood or community in which the inmate plans to live;

"(10)   There is a reasonable probability that the inmate will remain in the community without violating the law, and there is substantial likelihood that the inmate will conform to the conditions of parole."

---

confinement should be changed to life imprisonment with the possibility of parole, release to post-prison supervision or work release, it shall enter an order to that effect and the order shall convert the terms of the prisoner's confinement to life imprisonment with the possibility of parole, release to post-prison supervision or work release and may set a release date. Otherwise the board shall deny the relief sought in the petition."

The board found that petitioner's institutional employment history (factor 2) and disciplinary history (factor 3) weighed in his favor. It found that the factors concerning other criminal history (factor 6), conduct during previous periods of supervision (factor 7), the presence or absence of a mental disturbance that renders him criminally dangerous (factor 8), and the adequacy of a parole plan (factor 9), were "neutral." It found that the factors concerning petitioner's involvement in training and treatment (factor 1), maturity and responsibility (factor 4), excessive use of alcohol (factor 5), and the probability that petitioner will comply with the conditions of parole and the law (factor 10), weighed against petitioner. It then concluded that petitioner did not meet his burden to prove that he is likely to be rehabilitated within a reasonable period of time. Petitioner sought administrative review and was denied relief. He now seeks judicial review.

We review for substantial evidence and for substantial reason to be sure that the board "connect[s] the facts of the case and the result reached[.]" *Jenkins v. Board of Parole*, 356 Or 186, 208, 335 P3d 828 (2014). Our review of the board's order is "confined to the record." ORS 183.482(7). We consider evidence that detracts from the board's findings, but we do not reweigh the evidence. *Mendacino v. Board of Parole*, 287 Or App 822, 834, 404 P3d 1048 (2017), *rev den*, 362 Or 508 (2018). And we do not substitute our judgment for that of the board on any issue of fact. *Dixon v. Board of Parole and Post-Prison Supervision*, 257 Or App 273, 278, 306 P3d 716, *rev den*, 354 Or 389 (2013). We must affirm the board unless its "order is not supported by substantial evidence in the record." ORS 183.482(8)(c). "It is *the order* that must be supported by substantial evidence. We may not set aside or remand a final order, even if some findings are not supported by substantial evidence, unless the erroneous findings somehow affect the validity of the order." *Steele v. Water Resources Commission*, 248 Or App 229, 241, 273 P3d 243 (2012) (emphasis added). "Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding." ORS 183.482(8)(c).

Petitioner challenges the board's findings regarding alcohol treatment and his past use of alcohol (factors 1 and 5).

He acknowledges the significant role that alcohol played in the murder of his wife, and he notes that he has attended Alcoholics Anonymous (AA) meetings in prison. He no longer participates in AA "because he does not believe that God can remove his character defects and shortcomings." He instead addresses his addiction issues through meditation, exercise, and individual therapy sessions. The board found that petitioner lacks "clear touchstones, tools or tenets" for his continued recovery. It concluded that his decision to pursue "his own program," rather than "an evidence-based step program" was "lacking" in light of the significant alcohol-related harm that he caused. Given that petitioner committed the unquestionably violent murder of his wife at a time when he was actively abusing alcohol and the fact that sobriety outside prison will present more challenges than sobriety inside prison—including, at a minimum, the fact that petitioner would have easier access to alcohol outside the prison setting—the board adequately explained how those facts led to its conclusions regarding factors 1 and 5.

Petitioner also challenges the board's findings concerning several aspects of his maturity, responsibility, and insight as they relate to his post-release ability to adhere to the law (factor 4). The board found that petitioner's description of the murder itself was self-serving and at odds with other evidence, including his own testimony. It found that petitioner's statements reflect blame-shifting for the murder, which suggests a current lack of insight into his past criminal conduct. For example, petitioner expressed a preference for anger management classes over domestic violence education, stating that "[anger management is] not one-sided. It's you know, takes two [to] tango type thing." Substantial evidence in the record supports the board's finding that petitioner has still not taken full responsibility for murdering his wife, and that he continues to lack insight into his criminal conduct and its impact on others.

The board also identified petitioner's "continued unwillingness to sever relationships with [his] daughters" as a concern relevant to the fourth factor. Petitioner argues that the record does not support this finding because he has not attempted to contact his daughters since 2012. But the

fact that he has not attempted contact during the 10 years since the last review hearing, after 20 years of repeated and unwanted attempts, is not the same as a commitment to sever his relationship with his daughters. When asked whether he had "any thoughts" about ever wanting a relationship with his daughters again, he replied:

> "So I want to say yes. But in reality[,] I know it's a no. *** I respect their wishes and concerns now. And they don't have anything to worry about. I hold no malice towards anybody, towards any of this. And I just pray for their forgiveness."

That answer demonstrates, at a minimum, that petitioner is conflicted about whether he is willing to sever his relationship with his daughters and, importantly, that he has not given up on the possibility of future contact with them. Stating that he holds "no malice" against "anybody" when asked about his daughters is additional evidence that petitioner does not accept sole responsibility for murdering his wife and that he lacks insight into the impact of the murder on his daughters.

The board relied on all of its findings to conclude that "there is no substantial likelihood that Petitioner will conform to the conditions of parole" (factor 10). Given petitioner's unwillingness to enter AA or any similar twelve-step recovery program, his continued lack of insight into his crimes and the impact of those crimes on others, and his unwillingness to fully commit to severing his relationship with his daughters, substantial evidence in the record supports that conclusion as well.

The board weighed the evidence produced at the review hearing, made its factual findings, and explained its conclusion using the OAR 255-032-0020 factors as a guide. Substantial evidence and reason support the board's order denying petitioner relief.

Affirmed.