No. 804          September 10, 2025          343

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

CONRAD ROBERT ENGWEILER,
*Petitioner,*

*v.*

BOARD OF PAROLE AND POST-PRISON
SUPERVISION,
*Respondent.*

Board of Parole and Post-Prison Supervision
A178767

Argued and submitted May 8, 2024.

Thaddeus Betz argued the cause and filed the reply brief for petitioner. Also on the opening brief was Oregon Justice Resource Center.

Jeff J. Payne, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, Aoyagi, Judge, and Pagán, Judge.*

SHORR, P. J.

Affirmed.

_____
  * Aoyagi, Judge *vice* Mooney, Senior Judge.

**SHORR, P. J.**

Petitioner requests judicial review of the final order of the Board of Parole and Post-Prison Supervision (the board) denying his request for discharge from lifetime parole. In five assignments of error, petitioner challenges the process that the board engaged in and its application of the law to his request. We conclude that none of petitioner's assignments of error warrant reversal of the board's decision, and we therefore affirm.

FACTS AND PROCEDURAL HISTORY

Petitioner was convicted of committing aggravated murder in 1990 when he was 15 years old. He was initially sentenced to life in prison, with a mandatory 30-year minimum prison term. That sentence was eventually reversed on appeal, due to the prohibition against mandatory minimums for juvenile offenders under the age of 17 at the time of their crime. On resentencing, he was sentenced to life in prison. *State ex rel Engweiler v. Felton*, 350 Or 592, 597, 260 P3d 448 (2011).

In 2014, petitioner was released from prison to "parole for life" with a minimum period of active supervision of 36 months. After three years of active supervision, he was placed on "inactive status," in 2017. In July 2021, petitioner requested that the board discharge him from parole entirely.

The board initially determined that petitioner was not eligible for discharge, citing *Davidson v. Board of Parole*, 139 Or App 289, 911 P2d 973, *adh'd to as modified on recons*, 140 Or App 72, 914 P2d 14, *rev den*, 324 Or 18 (1996). The board eventually reversed course and considered the request. The board solicited information from petitioner's parole officer and the victim's family and considered petitioner's written statements. On October 20, 2021, the board issued Board Action Form (BAF) #14, stating that it was "unable to find that discharge and release from supervision is compatible with the welfare of society," and denied discharge. The board explained:

"Primarily, the Board reaches this decision based on the victim's family's fear of [petitioner] and their desire to

have a no-contact order in place to protect their safety and welfare. The facts of this case are gruesome and causes ongoing trauma, fear, and pain to the family and friends of [the victim]. The Board also considered the inactive supervision status of [petitioner's] supervision and the minimal requirements of individuals who are on inactive supervision. Despite the adverse decision against [petitioner's] request for discharge, the Board recognizes and commends [petitioner] on his reform activities, compliance with supervision, and his positive contributions since his release from the custody of the Oregon Department of Corrections. However, the Board finds the reasons to keep [petitioner] on inactive supervision outweigh the reasons for discharge."

Petitioner sought administrative review, and on May 25, 2022, the board issued Administrative Review Response (ARR) #9, affirming the denial of discharge. The board first rejected the procedural arguments that petitioner submitted in response to BAF #14 regarding notice and process and the standards that were applied to the decision. The board stated that it applied *former* ORS 144.310 (1989), *repealed by* Or Laws 1993, ch 680, § 7, and *former* OAR chapter 255, division 90 (Nov 1, 1989), in reaching its decision, and rejected petitioner's argument that he was entitled to contested case procedures under the Oregon Administrative Procedures Act (APA). The board further explained its finding that discharge from parole was not compatible with the welfare of petitioner and of society, rejecting petitioner's assertion that the board had improperly relied on irrelevant facts and had made an ad hoc or arbitrary decision:

"Petitioner's terms of parole supervision included a no-contact order of indefinite duration. The board finds that the victim's [family's] interest in protection from harm and fear are legitimate and reasonable, and ongoing. Petitioner acknowledges that there is 'ongoing harms' and the board recognizes petitioner's efforts to mitigate those harms. However, the board finds that providing a final release from parole supervision—including inactive supervision— is premature and incompatible with the welfare of petitioner and of society. In so finding, the board rejects petitioner's suggestion that the term 'welfare of society' does not include consideration of the desires of crime victims and the family members of crime victims to be protected

from harm by an offender serving lifetime supervision for aggravated murder.

"Petitioner also argues that the board's decision is 'ad hoc' and 'arbitrary.' The board disagrees. The board has considered petitioner's individual circumstances, including his age at the time he committed his crimes, and the specific circumstances in which he committed his crimes, which involved a brutal and prolonged assault, sexual assault, rape, strangulation, and eventual murder of a 16-year-old child. The circumstances of those crimes, petitioner's motivations to commit those crimes, and petitioner's decisions to continue committing those crimes despite several opportunities to do so, are all individualized considerations that are personal and unique to petitioner. The board's decision to authorize parole for petitioner [was] made in light of petitioner's unique personal circumstances, and the board's decisions during petitioner's parole supervision are similarly individualized and personal to petitioner, petitioner's crimes, petitioner's rehabilitation, and the interests and welfare of society. The board commends petitioner for his continued compliance with parole supervision, but under the circumstances, has determined that granting a full discharge from lifetime parole supervision is premature at this time, and not compatible with the welfare of petitioner or of society."

Petitioner filed this request for judicial review of that final order.

## HISTORICAL CONTEXT AND APPLICABLE LAW

As has been extensively laid out in petitioner's prior litigation, petitioner committed his crimes in an era when the Oregon criminal justice system was undergoing significant overhauls. *See Engweiler v. Board of Parole*, 343 Or 536, 538-41, 175 P3d 408 (2007). In proceedings such as this, where the crime occurred many decades ago, the board and the courts apply the law that was in effect at the time the petitioner committed the crime. *Id.* at 543 n 7.

The parties agree that it was appropriate for the board to consider petitioner's request for final discharge from parole, pursuant to *former* ORS 144.310 (1989), which stated:

> "When a paroled prisoner has performed the obligations of parole for such time as satisfies the State Board of Parole and Post-Prison Supervision that the prisoner's final release is not incompatible with the prisoner's welfare and that of society, the board may make a final order of discharge and issue to the paroled prisoner a certificate of discharge[.]"

A later-enacted statute, *former* ORS 144.305 (1989) stated that any parole term "shall extend for the entire term of the prisoner's sentence," with a minimum active term of supervision of three years.[1] However, in *Davidson v. Board of Parole*, we reviewed the history of ORS 144.310 and ORS 144.305, and concluded that the two statutes did not operate contemporaneously, and that "ORS 144.310 remained 'on the books' only as to crimes committed before the effective date of ORS 144.305." *Davidson*, 139 Or App at 293.

Despite initially declining to consider petitioner's discharge request based on ORS 144.305 and *Davidson*, the board eventually changed course and considered the request. Because the parties agree that *former* ORS 144.310 (1989) applies and petitioner is eligible to be considered for discharge, albeit for different reasons, we assume without deciding that *former* ORS 144.310 (1989) applies. The parties have framed their arguments entirely in light of that statute. Additionally, the board has taken the position in prior litigation that *former* ORS 144.310 (1989) applied to petitioner, and the board has applied it in granting discharge to at least one similarly situated parolee. We therefore only resolve the arguments that the parties have presented, and we do not address the validity of the board's application of *former* ORS 144.310 (1989).

### OREGON APA CONTESTED CASE PROCEEDINGS

In his first assignment of error, petitioner argues that the board erred in failing to comply with APA notice requirements for contested case proceedings, ORS 183.413, which petitioner asserts impacted his ability to enforce his rights and present arguments. We conclude that the

---

[1] The parole matrix system was largely eliminated for most felonies in 1989 with the creation of the sentencing guidelines and post-prison supervision system, as we recently discussed in detail in *Black v. Board of Parole*, 341 Or App 524, 539-40, ___ P3d ___ (2025). Petitioner has been released to parole.

consideration of a request for early discharge from lifetime parole does not qualify as a contested case proceeding, and therefore we reject petitioner's first assignment of error.

A contested case proceeding under the APA includes a proceeding before an agency that meets one of the following criteria:

"(A)   In which the individual legal rights, duties or privileges of specific parties are required by statute or Constitution to be determined only after an agency hearing at which such specific parties are entitled to appear and be heard;

"(B)   Where the agency has discretion to suspend or revoke a right or privilege of a person; [or]

"*****

"(D)   Where the agency by rule or order provides for hearings substantially of the character required by ORS 183.415, 183.417, 183.425, 183.450, 183.460 and 183.470."

ORS 183.310(2)(a). Petitioner asserts that the procedures set forth in *former* ORS 144.310 (1989) and *former* OAR chapter 255, division 90, for delaying discharge from parole, satisfy the definition in subparagraph (A), and he asserts that the potential for the suspension or revocation of parole satisfies subparagraph (B). We disagree.

*Former* ORS 144.310 (1989) states:

"(1)   When a paroled prisoner has performed the obligations of parole for such time as satisfies the State Board of Parole and Post-Prison Supervision that the prisoner's final release is not incompatible with the prisoner's welfare and that of society, the board may make a final order of discharge and issue to the paroled prisoner a certificate of discharge; but no such order of discharge shall be made within a period of less than six months after the date of release on parole, except that when the period of the sentence imposed by the court expires at an earlier date, a final order of discharge shall be made and a certificate of discharge issued to the paroled prisoner not later than the date of expiration of the sentence.

"*****

> "(3)  The board may extend or renew the period of active parole supervision or delay discharge of a parolee if it finds, in the manner provided in ORS 144.343, that the parolee has violated the conditions or terms of parole."

ORS 144.343 (1989)[2] dictates the hearing process to be followed when the board has reasonable grounds to believe that a person has violated a condition of parole, and that revocation of parole may be warranted.

Nothing in *former* ORS 144.310 (1989) requires the board to hold a hearing when considering whether to grant a request for early discharge prior to the expiration of the imposed term of parole. When petitioner was released from prison, he was released to lifetime parole. The denial of his request for early discharge was not an extension or revocation of parole; it was also not a delay in discharge because no discharge was currently scheduled—the board was merely adhering to the lifetime period that had already been imposed and declined to alter that established course. The order also did not renew the period of active supervision. Therefore, the hearing process set forth in ORS 144.343 (1989) did not apply to the denial of petitioner's request, as the decision was not one provided for in *former* ORS 144.310(3). Petitioner has identified no other statute that requires the board to hold a hearing when deciding on a request for early discharge from parole. Therefore this was not a contested case under ORS 183.310(2)(a)(A).

Similarly, the board's decision did not suspend or revoke any right or privilege of petitioner, and therefore the proceeding does not qualify as a contested case pursuant to ORS 183.310(2)(a)(B). As discussed in more detail below, the decision to grant early discharge is discretionary. Petitioner did not have a liberty interest in early discharge and did not otherwise have a right to a favorable decision. Although a decision to *revoke* parole or *extend* parole past an anticipated expiration date could impact the rights and privileges of a parolee, and could therefore be subject to a hearing and all attendant notice and process rights as provided in ORS 144.343, that was not the situation here. Petitioner

---

[2] ORS 144.343 has been amended numerous times since petitioner committed his crime.  Or Laws 1991, ch 836, § 2; Or Laws 1993, ch 581 § 3; Or Laws 1997, ch 313, § 12; Or Laws 2009, ch 178, § 30; Or Laws 2010, ch 89, § 13.

was already on lifetime parole and did not have a pending expiration date. A discretionary decision to not alter the status quo did not suspend or revoke a right or privilege of petitioner.

Because this was not a contested case proceeding, we reject petitioner's argument that he was not provided with the required notice under the APA.

## APPLICATION OF *FORMER* OAR CHAPTER 255, DIVISION 90

In his second assignment of error, petitioner argues that the board engaged in rulemaking when it cited *former* OAR chapter 255, division 90, as applicable to the discharge decision. Petitioner asserts that, because *former* OAR chapter 255, division 90, did not on its face apply to petitioner,[3] the board effectively amended the rules to make them applicable to petitioner. He further asserts that, even though the board did not engage in formal rulemaking, the amendment of *former* OAR chapter 255, division 90, to make it applicable to him was necessary in order to avoid an equal protection problem. Petitioner then argues in his third and fourth assignments of error that the board did not accurately apply *former* OAR chapter 255, division 90, when making the decision to deny discharge.

We are skeptical that the board's passing reference to *former* OAR chapter 255, division 90, constituted rulemaking. However, we need not decide that issue because even if the board's action did result in the amendment of *former* OAR chapter 255, division 90, to effectively revive it and make it applicable to crimes committed at the time of petitioner's crime, the rules contained therein did not impact petitioner's request for early discharge. *Steele v. Water Resources Commission*, 248 Or App 229, 240, 273 P3d 243 (2012) ("If a correct interpretation of the law would not or could not affect the agency's action, we have no statutory authority to do anything to the order on review.").

To the extent petitioner argues in his third assignment of error that the board erred by not following *former*

---

[3] *Former* OAR chapter 255, division 90, states that it pertains to parole supervision and discharge for inmates with crimes prior to December 4, 1986.

OAR 255-90-002(1) and *former* OAR 255, division 90, Exhibit I in setting petitioner's term of parole,[4] the term of parole was not set by BAF #14 or ARR #9; petitioner's lifetime term of parole was set by board action in 2014 when he was released from prison, and that decision is not before us.

The remainder of the processes set forth in *former* OAR chapter 255, division 90, apply to final release from parole or extension of parole at the end of an established term. *See former* OAR 255-90-003 (discussing final release at the end of a fixed term of parole); *former* OAR 255-90-010 (describing process prior to the expiration of the term of supervision and possible outcomes when discharge is not granted). Petitioner is serving a lifetime term of parole, and therefore the board was not considering whether discharge at the end of that term was appropriate; the board was considering only whether to end parole early, a situation not covered in those rules. *Former* OAR chapter 255, division 90, did not affect the board's action and petitioner has not established a basis for reversal.

## APPLICATION OF *FORMER* ORS 144.310 (1989)

In his fourth assignment of error, petitioner argues that *former* ORS 144.310 (1989) requires the board to make its discharge decision based solely on a parolee's performance on parole, and without considering other factors. Petitioner argues that the board's stated reasons for denying discharge were not related to his performance on parole, or to the welfare of petitioner or society, and that therefore the board misapplied the statute. He further asserts that, were the board to evaluate the discharge decision based on his perfect compliance with parole over the past eight years, it could not reasonably conclude that discharge was incompatible with his welfare or that of society. The board asserts that the decision to discharge someone from parole

---

[4] *Former* OAR 255-90-002(1) states: "The Board shall establish a period of active supervised parole as shown in Exhibit I. The Board may order an extended supervision period if it finds that such an extension is appropriate." Exhibit I establishes the period of time to be served on parole, based on the offense severity rating and the individual's criminal history risk assessment score, ranging from six months to one year, allowing for longer periods if the crime resulted in a death or if the nature of the offense was "of such seriousness that a longer period of supervision is needed than that established by the above guidelines." *Former* OAR 255, division 90, Exhibit I.

prior to the expiration of the established term is entirely discretionary, even if a parolee has satisfactorily performed the obligations of parole, and that the broad grant of discretion allows the board to consider any pertinent factors. We conclude that the board did not err.

We review an agency interpretation of law for legal error. ORS 183.482(8)(a). In construing a statute, we examine the text of the statute in context, and consider any useful legislative history of which we are aware.[5] *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).

As noted above, *former* ORS 144.310(1) (1989) states, in relevant part:

> "When a paroled prisoner has performed the obligations of parole for such time as satisfies the State Board of Parole and Post-Prison Supervision that the prisoner's final release is not incompatible with the prisoner's welfare and that of society, the board may make a final order of discharge and issue to the paroled prisoner a certificate of discharge."

We begin with the operative word "may." Use of the word "may" does not ordinarily impose an obligation to act:

> "The word 'may,' as used in a statute, does not ordinarily impose a mandatory duty; rather, '"may" generally implies that the legislature intended to create only the authority to act.' *Doyle* [*v. City of Medford*, 347 Or 546, 570-71, 227 P3d 683 (2010)]; *see also id.* at 572 ('[T]he word "may," *** ordinarily connotes authority or discretion.'); *Friends of the Columbia Gorge v. Columbia River*, 346 Or 415, 426-27, 212 P3d 1243 (2009) ('As this court has stated in the statutory context, in ordinary usage, "shall" creates a mandatory duty, while "may" creates only authority to act.' (Brackets and internal quotation marks omitted.)); *Nibler v. Dept. of Transportation*, 338 Or 19, 26, 105 P3d 360 (2005) ('[T]he word "may" ordinarily denotes permission or the authority to do something.'); Office of Legislative Counsel, *Bill Drafting Manual* § 4.4 (2018) ('To confer a right, power or privilege, use "may." Do not use *** "may" to impose a duty.').

---

[5] The parties have not directed us to, and we have been unable to locate, any relevant legislative history.

*Jondle*, 317 Or App 303, 313-14, 506 P3d 480 (2022). In previously interpreting ORS 144.310, we held:

> "[T]he board's authority to grant discharge from parole before the expiration of a paroled prisoner's sentence is discretionary under [ORS 144.310]. \*\*\* By its terms, the statute gives the board authority to release a parolee from parole supervision before the expiration of the sentence but does not require that the board do so. Rather, the statute limits the board's ability to discharge a person from parole to those situations where the board is satisfied, on the basis of the parolee's performance on parole, that the welfare of society and the parolee will be served."

*Haskins v. Palmateer*, 186 Or App 159, 165, 63 P3d 31, *rev den*, 335 Or 510 (2003).

Although it is true that in certain cases it is proper to construe the word "may" as meaning "shall" in order to carry out the intention of the legislature, *Jondle*, 317 Or App at 314, we are not persuaded that this is one of those cases. Nothing in the text or context persuades us that the legislature intended "may" to mean "shall," particularly in light of the second half of *former* ORS 144.310(1), which limits the discretion of the board in certain situations through the use of less discretionary language:

> "*[N]o such order of discharge shall be made* within a period of less than six months after the date of release on parole, except that when the period of the sentence imposed by the court expires at an earlier date, a final order of discharge *shall* be made and a certificate of discharge issued to the paroled prisoner not later than the date of expiration of the sentence."

(Emphases added.)

We conclude that the statute establishes that a parolee's performance of the obligations of parole sets the floor for the board to *consider* early discharge, but does not create a requirement that it be granted. Petitioner suggests that it would have been reasonable to deny the request for discharge if he had violated the terms of parole or behaved in a manner to make the victim's family afraid of him making contact, but that, in light of his perfect performance on parole, the only reasonable decision by the board

is to discharge him. We disagree. Based on the concerns expressed by the victim's family, which the board found to be legitimate, reasonable, and ongoing—a finding that petitioner has not challenged—the board reasonably could remain unpersuaded that discharge from parole was consistent with the welfare of society, such that the standard for exercising the discretion to grant discharge was not met. Beyond that, to the extent petitioner's argument suggests that perfect performance on parole, standing alone, requires the board to grant discharge, that argument is untenable in light of the statute's text which, as explained, makes the decision to grant discharge discretionary even when the board is convinced that the standards for discharge are satisfied.

In considering petitioner's request, the board took into account the position of the victim's family and their desire for a continuing no-contact order, along with petitioner's individual circumstances, in arriving at the decision to deny final discharge. The family members of the victim are a part of society, and the board recognized their interest in protection from harm and fear as legitimate, reasonable, and ongoing. Apart from arguing that those factors have nothing to do with his performance on parole, petitioner has not challenged those factual findings by the board. We conclude that the board did not err in deciding that final release from parole supervision was "premature and incompatible with the welfare of petitioner and society."[6]

---

[6] Because we conclude that the board's decision is discretionary even when the standards for discharge are satisfied, we do not reach petitioner's argument that the phrase "not incompatible with the welfare of society" is a delegative term that requires rulemaking or explanation in a final order. No matter the definition of that phrase, the board did not err in declining to exercise its discretion. To the extent petitioner asserts that the board has limited the meaning of that phrase through the mandatory processes established in *former* OAR 255, division 90, we reiterate our conclusion from above that those processes do not apply to the decision made on petitioner's request for early discharge.

Although we conclude that the board did not err in petitioner's case, we do not hold that the board's discretion is unbound. For example, if the board were to explicitly rely on a discriminatory or unlawful basis for denying discharge, such as a petitioner's race or ethnicity, that would be an improper basis on which to conclude that discharge was incompatible with the welfare of the petitioner and society. However, it is not necessary for us to resolve the limits of the board's discretion in this case.

DUE PROCESS

In his fifth assignment of error, petitioner argues that the board erred in failing to provide him with notice and a hearing prior to denying discharge, and therefore violated his due process rights under the Fourteenth Amendment to the United States Constitution.[7] We conclude that petitioner did not have a protected liberty interest in early discharge from parole, and therefore the board did not violate petitioner's procedural due process rights under the Fourteenth Amendment.

In determining whether a due process violation occurred, we must first consider "whether the state has deprived a person of a liberty or property interest within the meaning of the Due Process Clause." *Haynes v. Board of Parole*, 362 Or 15, 26, 403 P3d 394 (2017), *cert den*, 584 US 984 (2018) (internal quotation marks omitted). Petitioner asserts that the processes under *former* ORS 144.310 (1989) and *former* OAR chapter 255, division 90, for revoking parole or delaying discharge (by extending the term of parole) threaten a parolee's "conditional freedom" of being on parole, and therefore create a liberty interest. As discussed above, petitioner was not subject to the provisions regarding extension of parole because he was already on parole for life. The board's decision here also did not revoke his parole, or threaten to revoke his parole. He therefore has not faced any threat to his conditional freedom. The mere possibility that, at the discretion of the board, he could be discharged prior to the expiration of his lifetime parole term did not create a presumption that discharge would be granted, and therefore did not create a protected liberty interest. *Cf. Haynes*, 362 Or at 27 (holding that, in the context of converting a life sentence to life with the possibility of parole, it was "not enough * * * that a state offers the mere 'possibility' of parole; rather, a protected liberty interest is created only when the statute uses mandatory language that creates a presumption that parole release will be granted when certain necessary findings have been made," and concluding that an Oregon statute using mandatory "shall" language created a protected liberty interest). Petitioner has failed to advance any other

---

[7] The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." US Const, Amend XIV.

argument for what protected liberty interest he possessed. Because petitioner did not have a protected liberty interest in early discharge from parole, the board did not violate his due process rights.

Affirmed.